FILED
December 07, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003125563

Holly S. Burgess (SBN # 104757)
Law Offices of Holly S. Burgess
3017 Douglas Boulevard, Suite 300
Roseville, CA 95661
Telephone: (916) 774-7130
Facsimile: (916) 880-5213

Attorney for Debtor,
JAMES L. MACKLIN

# UNITED STATES BANKRUTPCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>JAMES L. MACKLIN,<br><br>        Debtor. | **Case No.: 2010-44610**<br><br>**DC NO. HSB-01**<br><br>**DEBTOR'S OPPOSITION TO MOTION FOR RELIEF OF AUTOMATIC STAY (UNLAWFUL DETAINER)**<br><br>Date:      December 9, 2010<br>Time:     1:00 P.M.<br>Dept:     E – Courtroom - 33<br>Address: 501 I St., Sacramento, Ca<br><br>HON. RONALD H. SARGIS |

      Deutsche Bank National Trust Co. (hereinafter, "Deutsche"), has requested an Order of this Court granting relief from the Stay under 11 U.S.C. §362(a). Deutsche filed its unlawful detainer action in state court though it does not have standing to bring the unlawful detainer suit, as it has no valid right, title or interest in the subject property. Debtor opposes this Motion as being factually defective, as Deutsche lacks standing as the true creditor or real party in interest, and for all of the reasons submitted before this Court as follows:

## INTRODUCTION

      1.      Based on documents obtained by the Debtor, Debtor believes and takes the position that the note and deed of trust on Debtors property was conveyed to a tax-free securitized mortgage trust at

- 1 -

1   the time of the execution of the Deed of Trust by Debtor. Debtor believes that the note and Deed of

2   Trust still reside, (were unlawfully conveyed, and therefore cannot possibly be an asset) in said trust.

3   Debtor's note and deed of trust was conveyed to the Accredited Mortgage Loan Trust 2006-2 ("LOAN

4   TRUST") on or about April 28, 2006. This trust allegedly holds the subject property loan rights. (See,

5   Evidence of Trust attached as **Exhibit "A"** to the Declaration of James Macklin.)

6        2.     The trust is governed by the Accredited Mortgage Loan Trust 2006-2 Master Sales and

7   Servicing Agreement ("MSSA"), (See **Exhibit "B,"** attached to the declaration of James Macklin.)

8   This trust allegedly holds the subject property loan rights (See, Evidence of Trust attached as **Exhibit**

9   **"A"** to the Declaration of James Macklin). Deutsche Bank, as Indenture Trustee, is merely a special

10   Corporate Trustee with limited ministerial duties, as opposed to a common law trustee with fiduciary

11   duties and responsibilities and, therefore, cannot be harmed at law or in equity as they are not a Real

12   Party in Interest and have never had any pecuniary or financial interest in the subject property, nor

13   have they been authorized to act in any remedial action(s) by majority vote of the investors.

14   According to the terms of the MSSA, Deutsche has never showed authorization by the voting majority

15   of the Investors of Accredited Mortgage Loan Trust 2006-2, the true "Creditor(s), as mandated by the

16   language of section(s) 10.02 (a)(b)(c) and 7.01 et. seq. of the Master Sales and Servicing Agreement).

17   Deutsche merely relies upon defective and false documents filed within state court and the Placer

18   County Recorder's Office which are presumed to be authoritative, but which, upon inspection by this

19   Court, shall evidence the fatally defective and false nature of these documents.

20        3.     Debtor has ownership interest rights and possession of the subject property and has

21   never given up those rights either expressed or implied. Debtor would be irreparably harmed through

22   the loss of his unique and valuable property and has the only verifiable equitable interest in the

23   property between the two parties to this action. Deutsche is nothing more than a "Fictitious Payee"

24   under the law.

25        4.     David Boyer, Robert J. Jackson and Associates ("Boyer") counsel for Deutsche in his

26   declaration, never offers any proof with admissible evidence, that the parties attempting to assign or

27   convey rights to affect the subject property in fact, have the right to do so. The documents relied upon

28

- 2 -

1  by Deutsche are false, null and void for the reasons stated herein.  Mr. Boyer only identifies them as

2  being recorded.  A simple review of the Exhibits used by Mr. Boyer reveal violations of law, with

3  attendant criminal and civil penalties as alleged herein. (See **Exhibit "C 1-3,"** Placer County

4  Recorder's Office documents on the subject property, attached to the declaration of James Macklin.)

5                                    **FACTUAL BACKGROUND**

6         5.        On or about September 27, 2010, Deutsche Bank filed a Motion for Relief from

7  Automatic Stay under 11 U.S.C. § 362 without Proof of Claim in the Bankruptcy Case, asserting that

8  said claim is secured by a lien against real property belonging to Debtor located at 10040 Wise Road,

9  Auburn, CA 95603 which is Plaintiffs' residence (hereinafter "the Property").   Deutsche refiled the

10 current motion for relief from stay on November 12, 2010.  Attached to the motion for Relief from

11 Automatic Stay was a copy of a Trustee's Deed Upon Sale, between grantor QAULITY LOAN

12 SERVICE CORPORATION and grantee Deutsche, showing transfer tax of $0.00, and claiming that

13 grantee paid $342,550.24 for the property.  Debtor believes this alleged sale was a credit bid and that

14 Deutsche actually paid no money for the property.

15        6.        Although there was a purported assignment of the original lender Accredited Mortgage

16 Home Lender's Inc. (Accredited) Deed of Trust, Debtor is informed and believes that such assignment

17 was not done by Accredited but fraudulently conveyed.  Deutsche did not attach the complete County

18 Recorder record on the subject property to its motion for relief from stay, nor did it attach the complete

19 County Recorder record to its unlawful detainer suit.  It only attached the Trustee Deed upon sale

20 mentioned in paragraph 5 above, and the state court unlawful detainer suit.  None of the other

21 assignments and/or substitutions are attached to either the motion or the unlawful detainer suit.  (See

22 **Exhibit "C,"** Placer County Recorder's Office documents on the subject property, attached to the

23 declaration of James Macklin.) Debtor maintains the reason for this is that Deutsche knows and admits

24 all those documents are false and fraudulent.

25        7.        Based on the original deed of trust, Accredited is the lender, the trustee was Financial

26 Title Company, and Mortgage Electronic Registration System was the nominee beneficiary of

27 Accredited.  (See, **Exhibit "G,"** Deed of Trust, attached to the declaration of James Macklin.)

28                                            - 3 -

_____
**DEBTOR'S OPPOSITION TO MOTION FOR
RELIEF OF STAY (UNLAWFUL DETAINER)**

8.     Deutsche is a stranger to the transaction, having no relationship with Accredited. MERS (who has no assignment from Accredited) purportedly assigned the Accredited Deed of Trust to Deutsche as nominee which assignment of Deed of Trust (See, **Exhibit "C-3,"** Corporate Assignment of Deed of Trust, to the declaration of James Macklin) was **NOT** recorded until November 30, 2009, which is **AFTER** notice of default which was filed on December 8, 2008 by some entity known as WINDSOR MANAGEMENT COMPANY. (See **Exhibit "D,"** Notice of Default, attached to the declaration of James Macklin.

9.     Pursuant to IRS Code 860D (a)(4), the asset Note must be conveyed into the REMIC Trust within 90 days of the closing date, June 1st, 2006 in this case. If the Deed "follows the note", this is an impossibility under the evidence provided by Deutsche Bank. This alleged action by Deutsche would effectively either dissolve the tax free status of the REMIC Trust which allegedly holds the beneficial interest, or, under the laws of the State of New York, under which the REMIC Trust is established pursuant to § 10.16  of the Master Sales and Service Agreement of the Trust, it could **not** have been lawfully conveyed after the closing date of the trust.

10.     As set forth in the Motion for Relief from Automatic Stay filed by Deutsche Bank on or about September 21, 2010, Deutsche Bank asserts that it is the rightful owner under the Trustee Deed of Sale from some entity known as QALITY LOAN SERVICE CORPORATION as trustee.

11.     MERS purportedly acted as nominee for Accredited under fraudulent assignment of the Deed of Trust to QALITY LOAN SERVICE CORPORATION on November 25, 2009, (See **Exhibit "C-2"**) having no interest in the promissory note, assigning such deed of trust to Deutsche Bank. MERS was never a party to the transaction, or entitled to payment from Plaintiffs.  In fact MERS has already fraudulently assigned the Deed of Trust to another entity BEFORE it allegedly assigned to QALITY LOAN SERVICE CORPORATION.  (See **Exhibit "C-1"**).

12.     Plaintiffs are informed and believe that MERS is not a nominee with Power of Sale under the ACCREDITED Deed of Trust and fraudulently assigned ACCREDITED Deed of Trust Deutsche Bank and, that MERS never had any interest in the ACCREDITED Deed of Trust or the promissory note secured thereby.

- 4 -

13.     Deutsche Bank's fraudulent claim under the ACCREDITED Deed of Trust is entirely unsecured and there is no security that attaches to the ACCREDITED Deed of Trust.

14.     In this case, foreclosure has been filed, the entity filing the foreclosure has no pecuniary interest in the mortgage loan.  The foreclosing entity, Deutsche, is a third party.  The entity lacks standing and the capacity to foreclose.  The entity has no first hand knowledge of the loan, no authority to testify or file affidavits as to the validity of the loan documents or the existence of the loan.  The entity has no legal authority to draft mortgage assignments relating to the loan.  The foreclosing entity and its agents regularly commit perjury in relation to their testimony.

15.     In Fact ACCREDITED, the "Lender", on the original Promissory Note was not the lender.  The originators of the loan immediately and simultaneously allegedly securitized the note through the means of conversion of an U.C.C. Article III negotiable Instrument into U.C.C. Article VIX, non-negotiable paper.  The beneficial interest in the note was never in the lender.  In this case, MERS, acting as nominee for ACCREDITED under the assignment of ACCREDITED Deed of Trust, was never intended to be the assignee of the mortgage loan.  The Servicer, QUALITY LOAN SERVICE CORPORATION, who acted as trustee for the sale, was and is not in privity with the lender.  The true owner or beneficiary of the mortgage loan has not declared a default, cannot declare a default under its' Trust Agreement, and does not have an interest in the Note that allows for any remedial actions to be undertaken by the Beneficial Interest Holder(s).

16.     Debtor is informed and based on information and belief alleges the obligations reflected by the note allegedly secured by assignment of ACCREDITED Deed of Trust to MERS have been satisfied in whole or in part because the investors who furnish the funding for these loans have been paid to the degree that extinguishments of the debts has occurred with the result that there exist no obligations on which to base any foreclosure on the property owned by Plaintiffs. (See **Exhibit "E,"** the loan level file, attached to the declaration of James Macklin.)  **Exhibit "E"** shows the Debtor's loan to be at $0.00.  Defendants have and continue to cloud the title and illegally collect payments and attempt to foreclose upon the property of the Plaintiffs when they do not have lawful rights to foreclose, and are not holders-in-due-course of the notes.

- 5 -

17. The mortgage loan assigned to MERS, as nominee, is, at most, an unsecured debt. The only parties entitled to collect on the unsecured debt would be the holder-in-due-course and beneficial owner(s) of the original Promissory Note, the original "Lender of Record", *if* the asset is still booked as an asset and has not been sold and de-recognized as an asset under FASB 140.

18. Certain individuals who were the employees of the Servicer QUALITY LOAN SERVICE CORPORATION, and even the employees of the law firms, executed and notarized forged documents as to the ownership of the loan. The affiants have committed counts of fraud, perjury and forgery of the mortgage loan.

19. Deutsche, represented itself as a "Deutsche Bank National Trust Company, as Indenture Trustee" are coming to Court and are actually not common law Trustees, rather, they are special Corporate Trustees with limited ministerial duties. These rights, duties and obligations do not include any remedial actions as they relate to the assets of the REMIC Trust (See **Exhibit "B,"** the Master Sales and Servicing Agreement ("MSSA") attached to the Declaration of James Macklin, ***Trustees' Rights and Duties*** § 3.04, 7.01 et.seq, 10.02. and 10.16). Unless Deutsche as the Indentured Trustee has actual knowledge of a default, it cannot act. (See **Exhibit "F,"** The Indenture, §6.01and §6.01(d), attached to the declaration of James Macklin). By the terms of the Indenture, Deutsche is prohibited from any action including foreclosure.

20. Importantly, Deutsche, as "Trustee" or custodian, must have the mortgages recorded in the investors name as the beneficiaries of the MBS within 90 days of the "closing date" ***(IRS Rule 860D (a)(4))***, as defined within the REMIC Trust Agreement. Every mortgage in the MBS should have been publicly recorded in Placer County where the property is located with a mortgage in the name of "Accredited Mortgage Loan Trust 2006-2, under the pooling and servicing agreement dated June 1, 2006." Such mortgage would have had been publicly recorded in the year 2006.

21. The loan servicers like WINDSOR MANAGEMENT COMPANY and QUALITY LOAN SERVICE CORPORATION, are merely administrative entities, under limited power of attorney, which collect the mortgage payments and escrow funds. The Servicer has no greater power than its' Principal, the Trustee, (without the express voting majorities' authorization by majority vote,

**DEBTOR'S OPPOSITION TO MOTION FOR RELIEF OF STAY (UNLAWFUL DETAINER)**

1   signed individually, under penalty of perjury), and lacks the authority to bring any action on behalf of

2   the REMIC Trust. The Indenture Trustee, Servicer, Issuing Entity (REMIC Trust), Depositor,

3   Underwriter, have executed Trust Agreements, under oath, with the Security Exchange Commission

4   ("SEC"), and the Internal Revenue Service ("IRS"), as mortgage asset "pass-through" entities wherein

5   they can never own or manage the mortgage loan assets in the MBS. This allows them to qualify as a

6   Tax Free Real Estate Mortgage Investment Conduit ("REMIC") rather than an ordinary Real Estate

7   Investment Trust ("REIT"). As long as "AMLT 2006-2" is a qualified REMIC, no income tax will be

8   charged to the trust.

9       22.     The promissory note was never conveyed pursuant to the Trust mandates and the

10  mortgages were never conveyed or recorded pursuant to the proper chain of custody and Assignment

11  within the Trust Agreement(s).

12      23.     In this scenario, even if the foreclosing entity produces a copy of a note, or even an

13  alleged original, the mortgage loan was not conveyed into the trust under the requirements of the

14  prospectus for the trust or the REMIC requirements of the IRS. Mere possession of an Instrument does

15  not confer the status of a person entitled to enforce the Instrument.

16      24.     Consequentially, the end result is that the required MBS asset, or any part thereof

17  (mortgage note or security interest), was not legally transferred to the trust to allow the trust to ever be

18  considered a "holder" of a mortgage loan. Neither the "Trust" nor the Servicer QUALITY LOAN

19  SERVICE would ever be entitled to bring a foreclosure or declaratory action. The Trust will never

20  have standing or be a real party in interest before this Court.

21      25.     The transfer of mortgage loans into the Trust in which Deutsche Bank is the Trustee

22  after the "cut off date" (in this case 2006), destroys the trust's REMIC tax exempt status, and this trust

23  would owe millions of dollars to the IRS and the State of California as the income would be taxed at

24  of one hundred percent (100%), if the Court were to find in favor of the Defendant(s). In this scenario,

25  the Court would be obligated to report to the IRS and the SEC the findings of the Court so that

26  immediate financial sanctions and possible criminal charges could be brought against the

27  Defendant(s).

28

**DEBTOR'S OPPOSITION TO MOTION FOR
RELIEF OF STAY (UNLAWFUL DETAINER)**

26.     Subsequent to the "cut off date" listed in the prospectus, whereby the mortgage notes and security for these notes had to be identified, and the Note and Mortgages transferred, within 90 days, and thereafter, the pool is permanently closed to future transfers of mortgage assets.

27.     Defendants fraudulently conveyed Plaintiffs' mortgage loan, which fraudulently recorded on or about November 29, 2009 in an attempt to transfer a Mortgage Assignment into a REMIC after that REMIC's "cut off" and "closing dates".

28.     Therefore, the lack of lawful acquisition of Debtor's mortgage loan violates the prospectus presented to the investors and the IRS REMIC requirements.

29.     Debtor was the victim of a predatory loan.  Debtor signed a Promissory Note and Deed of Trust.  By doing so, Debtor was unknowingly converting his property into an alleged asset of a Mortgage baked security ("MBS'), while his credit and signatures were used to sell securities without his consent or knowledge of the terms and conditions of the contract.  Debtor was never informed of the nature of the scheme.  They were deliberately induced into signing a Negotiable Instrument which was never intended as such, but intended as collateral for a MBS.

30.     The fact that this loan was meant to fund a MBS was a "Material disclosure" which was deliberately and intentionally undisclosed.  The failure to disclose the identity of the true lender at closing was also a "material disclosure"; the nature of which would make the contract voidable under California contract law.

31.     As required by SEC, this MBS/Trust has a Master Sales and Servicing Agreement ("MSSA") (**Exhibit "B")** which is dated June 1, 2006 and must be publicly filed.  The only purpose for the MSSA is for the administration and distribution of funds to the investors and the obligation of the so called Trustee in administering the MBS.  The investors who put up money for the MBS and who received the MBS certificates or Bonds, are purported to not be parties to the MSSA.   However, under the Step Transaction Doctrine, as adopted by the Courts, these transactions are interdependent of one another and interrelated and, therefore, fall under the scope of a "single transaction", as defined by the Doctrine. The Borrowers and the Investors are the true Principals to the transaction, with the only financial and pecuniary interest in the transaction(s).

**DEBTOR'S OPPOSITION TO MOTION FOR RELIEF OF STAY (UNLAWFUL DETAINER)**

32.     The MSSA merely sets forth what happens after the mortgages are bundled together. However, the MSSA also sets forth a ***Cut-Off Date***.  The cut-off date is the date on which all mortgage loans in the MBS/Trust must be identified and set out in the SEC required list of mortgage loans.

33.     Like the cut-off date, this MBS/Trust had a ***Closing Date***.  The Closing Date is the date that the individually identified mortgages were to be transferred through the Custodian for the benefit of the investors.  The Trust Custodian must certify that for each mortgage loan, the Trust Custodian has possession of the original Promissory Note, all original endorsements and assignments transferring the Note and proof that the ownership of the Note has been lawfully transferred for the benefit of the investors.  Further proof of the ownership of a mortgage loan is required by a public recording of the Mortgage or Assignment of the mortgage itself.  This MUST have occurred by the closing date. Because of this closing date, there MBS or Deed of Trustee of Debtor could **not** thereafter be assigned.

34.     In this case, Debtor's mortgage was never part of MBS scheme as Deutsche Bank represented to the Court because alleged assignment of the mortgage loan into the trust did not occur until on or about November 25, 2009; wherein the MBS closing date was sometime in 2006.

35.     Deutsche Bank, as MBS trustee, claims to be acting on behalf of the MBS/Trust and claims that it has acquired the loan from MERS, who was not the party in ACCREDITED deed of trust.  The multiple transfers of title of the mortgage loan between the originator, ACCREDITED and the MBS/Trust is simply ignored as it can never be proved or shown to the Court.  Chain of Mortgage assignment is broken as Deutsch and QUALITY LOAN SERVICE CORPORATION were never the mortgagee of record under a Mortgage Assignment and has absolutely no legal tie to the investors in the MBS.

36.     The assignment of Debtor's mortgage was signed and notarized many years after the actual date of the loan and the date listed with the SEC and IRS as the "Closing" of the REMIC.  In this case, if found to be true, this MBS/Trust has been operating illegally as a tax exempt REMIC.

37.     Here, the Note and Mortgage were severed or de-coupled when the ACCREDITED deed of trust was fraudulently assigned to MERS as nominee for Accredited.  Accredited never loaned

- 9 -

any money to the Plaintiffs. MERS was never a beneficiary under the Note. MERS purportedly held the Mortgage as "nominee" for Accredited, an assignee of fraudulently conveyed deed of trust. Since then, the only party who could authorize the mortgage assignment for a bankrupt mortgage assignee would be the Bankruptcy Trustee. In this case, MERS, Inc. has been assigned on behalf of a bankrupt entity, a criminal violation of the bankruptcy code.

38.    An assignment from MERS was a legal nullity. MERS never had an interest in this fraudulently conveyed mortgage and Note.

39.    MERS assigned mortgage was prepared by an agreement between the Defendants. These Defendants used false information regarding the individuals executing such mortgages and assignments, holding such individuals out to be officers of MERS.

40.    Defendant Deutsche Bank filed and caused to be filed MERS mortgage and assignments of mortgage in the public record and provided these false documents to prove chain of title that does not exist to the Court as part of its Motion for Relief from Automatic Stay.

## MEMORANDUM OF POINTS AND AUTHORITIES

41.    Proper transfer of a deed of trust is controlled by California Civil Code §2934(a)(1)(2) et. seq., which provides:

"The trustee under a deed of trust upon real property [...] may be substituted by the recording, in the county in which the property lies, of a substitution executed and acknowledged by: (A) all of the beneficiaries under the deed of trust, or their successors in interest.. or, (B) the holders of more than 50% of the record beneficial interest of a series of notes secured by the same real property...".

42.    Because Deutsche, is precluded from enforceability of the subject Deed by the language of the controlling Trust Indenture and Master Sales and Servicing Agreement, executed by them and filed for record with the United States Securities and Exchange Commission (Accredited Mortgage Loan Trust 2006-2 Asset-Backed Notes, June 1, 2006, (See **Exhibit "A"**) they lack standing as a real party in interest and cannot represent the beneficial interest of the true creditor(s) of this subject property. The series "Accredited Mortgage Loan Trust 2006-2" certificate holders, individually and in

- 10 -

their 50% voting majority, must sign and authorize, under penalty of perjury, to ratify the commencement of this, and any actions brought by Deutsche.

43.    Deutsche has violated the laws of California, Cal. Penal Code §115.5, by knowingly placing into the Public Record documents which it knew to be false (Debtor's Ex. "1 A-1" through "1 A-4"). Deutsche and County employees relied upon these false filings and moved an action known as Unlawful Detainer against Debtor with the intent of separating Debtor from his property under color of law.

44.    The Substitution of Trustee relied upon by Deutsche was executed by "Mortgage Electronic Registration Systems, Inc." ("MERS"), as nominee of Accredited Home Lenders, Inc., the "lender of record". Because MERS never owned the Note or the Deed, nor did MERS give any consideration, MERS could not pass any beneficial interest to any party.

**Improprieties in Recordings**

45.    The Substitution also was executed on Jan. 30, 2008, yet never signed until March 4, 2009.  Debtor's Ex. "1 A-2" evidences a Substitution of Trustee, executed by "Wayne Hessler", alleged Duly Appointed Officer of Deutsche, Deutsche Bank National Trust Co., as Indenture Trustee on behalf of the holders of the Accredited Mortgage Loan Trust 2006-2 Asset-Backed Notes by Select Portfolio Servicing, Inc. as Attorney in Fact. This document was executed on 8/21/2009 and therefore must contain qualified signatures at the time of signing.   Deutsche, however, did not receive any Assignment of the Deed until 11/30/2009, as evidenced by Debtor's "Ex. 1A-3"(Corporate Assignment of Deed of Trust).

46.    It is important to understand that Deutsche was required to have possession of the Note and Deed by the "cut-off date" June 1st, 2006, as filed in the Trust Agreements with S.E.C ("Ex. 2-A), in order for the REIT and subsequent REMIC Trusts to be valid. A physical and legal impossibility exists as to the location and assignment of the subject Note and Deed. Since the original Lender, ACCREDITED, filed for Bankruptcy in April, 2009, MERS, as Nominee, could not have assigned any asset during the pendency of the bankruptcy. Thus, Deutsche did not have the authority to execute the Substitution of Trustee on **8/21/2009,** thereby nullifying the Substitution. The Trustee's Deed Upon

- 11 -

1    Sale, predicated upon the previously exhibited defective documents and is therefore a nullity and

2    carries with it no authority.

3        47.    Since there was an alleged conversion of the mortgage loan Note into a security,

4    conferring "creditor" status upon the investors of "AMLT 2006-2", the "Sale and Servicing

5    Agreement," (**Exhibit "B"**) is the controlling document for the chain of title to the subject Note and

6    Deed of Trust and must be strictly comported to by Deutsche in order for the "AMLT 2006-2 Trust" to

7    be valid.

8        48.    Page (3) Article II of **Exhibit "B"** evidences the actual "critical path" that the mortgage

9    loan Note ***and Deed of Trust*** must have traveled in order to comply with the S.E.C. filing. Notice that

10   the Note was sold by: (1) Accredited Home Lenders, Inc.(Sponsor) to the Depositor (Accredited

11   Mortgage Loan REIT Trust), (2) then sold again by the Depositor to the Issuing Entity ("AMLT 2006-

12   2"), (3) then the mortgage loan Notes were ***"pledged"*** by the Issuing Entity to the Indenture Trustee,

13   Deutsche Bank, ***without recourse.*** This form of funding is known as "table-funding," and is presumed

14   to be predatory under 28 U.S.C. 226 (Reg. Z and Truth in Lending Act). Since there was at least one

15   (1) undisclosed third party to the contract, the Borrower had no opportunity to know the true source

16   and terms of the funds and, therefore, the Note does not describe the Real Parties and is not evidence

17   of the Obligation. Third party claims against Debtor could arise as a result of this type of funding**.**

18   None of these assignments is reflected within the recorded filings at the County of Placer's Office, nor

19   was Debtor ever timely notified of a transfer of his Note pursuant to Reg. Z, 12 CFR 226.36 and 15

20   U.S.C. § 1641(g).

21       49.    This represents a split of the Note and Deed of Trust and, therefore, nullifies the Deed

22   of Trust.  Without the "Power of Sale" clause within the deed, Deutsche has executed an intentionally

23   fatal and false uttering upon the Court and did so with full knowledge of their trust agreements dated

24   June 1, 2006.

25       50.    Under the "Step Transaction Doctrine", as adopted by the Courts, the transactions cited

26   herein known as the loan agreement and the underlying securitization documents, are reliant upon one

27   another and are interrelated. They pass the three test rule and are, therefore, one transaction. The

28

- 12 -

1  proceeds of the sale of securities were used by Deutsche and its affiliates, knowingly and with intent,

2  to pay out undisclosed fees to interrelated parties, secure various insurances and credit enhancements,

3  thus creating undisclosed profits, and to fund the mortgage loans without the knowledge of the

4  Borrower. This also represents a serious violation of disclosure; the Borrower never had an

5  opportunity to understand the true character of his loan nor the indispensible parties to the transaction.

6  *Shuwa Investment Corp. v. County of Los Angeles (1991) 1 Call. App. 4th 1635, 1648-1649; Shuwa,*

7  *Supra at p. 1648 [End Result Test, Interdependence Test, Binding Commitment Test].* Only one test

8  needs to be satisfied for the step transaction doctrine to apply (*McMillim-BCED/Miramar Ranch North*

9  *v. County of San Diego (1995) Cal. App. 4th 545, 556).*

10       51.       The Debtor's legal and equitable rights to the subject property have never been

11  extinguished. Under 11 U.S.C. §541(a)(1), Debtor, Macklin, has all rights reserved there under and

12  opposes Deutsche's legal conclusion of duly perfected title as being without merit and relying upon

13  false and substantively misleading documents, as evidenced herein. These documents were filed with a

14  Court and the County Recorder's Office with the intent that a Homeowner would become indebted to

15  a specific party not entitled to such and that ownership interest would be conveyed to Deutsche herein

16  without lawful cause.. The Title was never Duly Perfected in Deutsche Bank under the laws of the

17  State of California or under the laws of the United States.

18       52.       The original lender issued a predatory loan to Debtor.  Deutsche Bank claims that ("Ex.

19  2-B" pg. 6 (m)), each loan within the "AMLT 2006-2" trust complied with all state, federal, local laws

20  and regulations including Truth In Lending and other consumer protection laws, and disclosure and

21  recording laws.

22       53.       In fact, Debtor's Uniform Residential Loan Application was intentionally falsified by

23  persons unknown to Debtor as to the "Year Acquired" (Debtor acquired the property in March, 2005),

24  "Years on the Job and Yrs. Employed in this field" (Debtor was employed in his field for three yrs.

25  And only held his Contractor's License for two yrs., as verified by the Broker/Lender), Pg. 2, the "Yr.

26  Acquired is different from the first pg., indicating a "seasoning" issue for the approval of a loan for the

27  lender, Pg. 3: the lender shows Debtor's "Base Monthly Income" as $29,363.03. This is a false

28

- 13 -

representation made and accepted by the  Lender. Pg. 10 clearly shows Debtor's verified taxable income to be $7,034.75 per month, a difference of $22,328.28. This is Predatory Lending in its most egregious and blatant form. Deutsche's alleged agents also falsified assets on the same pg. 3 under cash on hand column as $65,000.00 in Debtor's Wells Fargo bank account. This money was never there…ever. Pg. 5 of the same Exhibit shows that the property was valued at $615,000.00. Since a first and second mortgage were executed by Debtor with the same "Lender" in the amount of $659,000.00, this creates a loan which exceeds the amounts allowed to be loaned based upon the property value. At the bottom of the pg. 5, the court should note that the interview was conducted by telephone and Debtor was never privy to the information being inserted into this, or any other application forms used by Deutsches' agents and affiliates. On pg. 10, the "Underwriting Transmittal Summary" used by the Lender, the appraised value has suddenly changed from $615,000.00 to $665,000.00.

54.    These loan-to-value ratios are exactly what they need to be in order for the loan to be accepted into the mortgage loan trust. This is fraudulent and deceptive lending practices executed with knowledge and intent by the Deutsche and it's affiliate lender, Accredited Home Lenders, Inc., as exhibited in the Trust Indenture and Sales and Servicing Agreement as filed with the S.E.C. June 1, 2006.

55.    Deutsche's claim of holding beneficial interest cannot be valid for all of the reasons stated herein, therefore, Deutsche has no right to their Motion to Lift Stay in the Bankruptcy case.

Dated:  December 7, 2010                    Respectfully submitted,

                                                         LAW OFFICES OF HOLLY S. BURGESS



                                                         By: **/s/ Holly S. Burgess**                    .
                                                              HOLLY S. BURGESS

- 14 -