**FILED**
**December 07, 2010**
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003125598

Holly S. Burgess (SBN # 104757)
Law Offices of Holly S. Burgess
3017 Douglas Boulevard, Suite 300
Roseville, CA 95661
Telephone: (916) 774-7130
Facsimile: (916) 880-5213

Attorney for Debtor,
JAMES L. MACKLIN

# UNITED STATES BANKRUTPCY COURT

## EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

|  |  |
|---|---|
| In re | **Case No.: 2010-44610** |
| JAMES L. MACKLIN, | **DC NO. HSB-01** |
| Debtor. | **DECLARATION OF JAMES L. MACKLIN IN SUPPORT OF OPPOSITION TO MOTION FOR RELIEF OF AUTOMATIC STAY (UNLAWFUL DETAINER)** |
|  | Date:        December 9, 2010<br>Time:        1:00 P.M.<br>Courtroom: E-33<br>Address:    501 I St., Sacramento, Ca |
|  | HON. RONALD H. SARGIS |

I, James L. Macklin, declare as follows:

1.      I am a debtor in the above-entitled action.

2.      The facts stated in this Declaration are of my own personal knowledge and if called upon to testify, I could and would competently testify thereto.

3.      Attached hereto as **Exhibit "A"** is a true and correct copy of **EVIDENCE OF TRUST.**

4.      Attached hereto as **Exhibit "B"** is a true and correct copy of certain portions of the Master Sale and Servicing Agreement dated as of June 1, 2006 by and among ACCREDITED

-1-

1    MORTGAGE LOAN REIT TRUST, as Depositor, ACCREDITED HOME LENDERS, INC., as

2    Sponsor and Servicer, ACCREDITED MORTGAGE LOAN TRUST 2006-2, as Issuing Entity,

3    and DEUTSCHE BANK NATIONAL TRUST COMPANY, as Indenture Trustee.

4         5.     Attached hereto as **Exhibit "C"** is a true and correct copy of three Substitutions of

5    Trustee, filed with the Placer County Recorder's Office.

6             a.     Attached hereto as **Exhibit "C-1"** is a true and correct copy

7    **SUBSTITUTION OF TRUSTEE**, recorded March 10, 2009.  Mortgage Electronic Registration

8    Systems, Inc. named as Beneficiary, substitutes Windsor Management Co., as Trustee under Deed

9    of Trust, signed by Joseph Sanfilippo, dated 1/30/08.

10             b.     Attached hereto as **Exhibit "C-2"** is a true and correct copy of

11    **SUBSTITUTION OF TRUSTEE**, recorded November 25, 2009.  Mortgage Electronic

12    Registration Systems, Inc. as Nominee for Accredited Home Lenders, Inc., a California

13    Corporation.  Deutsch Bank National Trust Company, as Indenture Trustee, on behalf of the

14    holders of the Accredited Mortgage Loan Trust 2006-2 Asset Backed Notes by Select Portfolio

15    Servicing, Inc. as Attorney in Fact named as Beneficiary, substitutes Quality Loan Service

16    Corporation., as Trustee under Deed of Trust, signed by Wayne, Hessler, Duly Appointed Officer,

17    dated 8/21/09.

18             c.     Attached hereto as **Exhibit "C-3"** is a true and correct copy of

19    **CORPORATE ASSIGNMENT OF DEED OF TRUST**, recorded November 30, 2009.

20         6.     Attached hereto as **Exhibit "D"** is a true and correct copy of  **NOTICE OF**

21    **DEFAULT** filed with the Placer County Recorder's Office.

22         7.     Attached hereto as **Exhibit "E"** is a true and correct copy of a portion of the

23    **MORTGAGE BACKED SECURITY** containing Debtor's loan.  Original document consists of

24    approximately 350 pages.

25         8.     Attached hereto as **Exhibit "F"** is a true and correct copy of **INDENTURE** dated

26    as of June 1, 2006 by and between ACCREDITED MORTGAGE LOAN TRUST 2006-2, as

27    Issuing Entity and DEUTSCHE BANK NATIONAL TRUST COMPANY, as Indenture Trustee.

28

1    9.    Attached hereto as **Exhibit "G"** is a true and correct copy of Deed of Trust.

2    I declare under penalty of perjury under the laws of the United States of America that the

3    foregoing is true and correct.

4    Executed this 7th day of December, 2010 at Auburn, Placer County, California.

5

6                    __/s/  James L. Macklin__                    .
                        JAMES L. MACKLIN
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    -3-
_____

*In re Debtor:  James L Macklin*
USBC Eastern District of California Case No:  10-44610
Debtor's Opposition to Motion for Relief from Stay (Unlawful Detainer)
Declaration of James L. Macklin

**EXHIBIT "A"**

Case 10-44610     Doc 61     Page 5 of 62

THIS IS NOT A STATEMENT OF GOOD STANDING

| | | |
|---|---|---|
| File Number: | **4169251** | Incorporation Date / Formation Date: **06/02/2006** (mm/dd/yyyy) |
| Entity Name: | **ACCREDITED MORTGAGE LOAN TRUST 2006-2** | |
| Entity Kind: | **STATUTORY TRUST** | Entity Type: **GENERAL** |
| Residency: | **DOMESTIC** | State: **DE** |

**REGISTERED AGENT INFORMATION**

| | | |
|---|---|---|
| Name: | **U.S. BANK TRUST NATIONAL ASSOCIATION** | |
| Address: | **300 EAST DELAWARE AVENUE 8TH FLOOR** | |
| City: | **WILMINGTON** | County: **NEW CASTLE** |
| State: | **DE** | Postal Code: **198091515** |
| Phone: | | |

*In re Debtor:  James L Macklin*
USBC Eastern District of California Case No:  10-44610
Debtor's Opposition to Motion for Relief from Stay (Unlawful Detainer)
Declaration of James L. Macklin

**EXHIBIT "B"**

Exhibit 10.1
EXECUTION VERSION

SALE AND SERVICING AGREEMENT

dated as of June 1, 2006

by and among

ACCREDITED MORTGAGE LOAN REIT TRUST,
as Depositor,

ACCREDITED HOME LENDERS, INC.,
as Sponsor and Servicer,

ACCREDITED MORTGAGE LOAN TRUST 2006-2,
as Issuing Entity,

and

DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Indenture Trustee

**TABLE OF CONTENTS**

Page

ARTICLE I
DEFINITIONS

Section 1.01. Certain Defined Terms   1
Section 1.02. Provisions of General Application   2

ARTICLE II
SALE AND CONVEYANCE OF THE MORTGAGE LOANS

Section 2.01. Purchase and Sale of the Closing Date Mortgage Loans; Deposit of Derivatives   2
Section 2.02. Reserved   3
Section 2.03. Purchase Price   3
Section 2.04. Possession of Mortgage Files; Access to Mortgage Files   3
Section 2.05. Delivery of Mortgage Loan Documents   4
Section 2.06. Acceptance of the Trust Estate; Certain Substitutions; Certification by the Indenture Trustee   7
Section 2.07. Grant of Security Interest   8
Section 2.08. Further Action Evidencing Assignments   9
Section 2.09. Assignment of Agreement   10
Section 2.10. Conveyance of the Subsequent Mortgage Loans   10

ARTICLE III
REPRESENTATIONS, WARRANTIES AND COVENANTS

Section 3.01. Representations, Warranties and Covenants of the Servicer   13
Section 3.02. Representations, Warranties and Covenants of the Sponsor   15
Section 3.03. [Reserved]   16
Section 3.04. Representations, Warranties and Covenants of the Indenture Trustee   16
Section 3.05. Covenants and Representations of the Sponsor and Servicer Regarding Prepayment Charges   17
Section 3.06. Representations, Warranties and Covenants of the Depositor   18

ARTICLE IV
THE MORTGAGE LOANS

Section 4.01. Representations and Warranties Concerning the Mortgage Loans   19

ARTICLE IX
[RESERVED]

ARTICLE X
MISCELLANEOUS PROVISIONS

| | | |
|---|---|---|
| Section 10.01. | Limitation on Liability | 63 |
| Section 10.02. | Acts of Noteholders | 63 |
| Section 10.03. | Amendment | 64 |
| Section 10.04. | Recordation of Agreement | 65 |
| Section 10.05. | Duration of Agreement | 65 |
| Section 10.06. | Notices | 65 |
| Section 10.07. | Severability of Provisions | 66 |
| Section 10.08. | No Partnership | 66 |
| Section 10.09. | Counterparts | 66 |
| Section 10.10. | Successors and Assigns | 66 |
| Section 10.11. | Headings | 66 |
| Section 10.12. | No Petition | 66 |
| Section 10.13. | Third Party Beneficiary | 66 |
| Section 10.14. | Intent of the Parties | 66 |
| Section 10.15. | Compliance With Regulation AB | 67 |
| Section 10.16. | GOVERNING LAW; CONSENT TO JURISDICTION; WAIVER OF JURY TRIAL | 67 |

| | |
|---|---|
| Schedule I | Mortgage Loan Schedule |
| Appendix I | Defined Terms |

EXHIBITS

| | |
|---|---|
| Exhibit A | Contents of the Mortgage File |
| Exhibit B | Reserved |
| Exhibit C | Indenture Trustee's Acknowledgement of Receipt |
| Exhibit D | Initial Certification of Indenture Trustee |
| Exhibit E | Final Certification of Indenture Trustee |
| Exhibit F | Request for Release of Documents |
| Exhibit G | AHL Officer's Certificate |
| Exhibit H | Servicing Criteria to be Addressed in Assessment of Compliance |
| Exhibit I | Form 10-D, Form 8-K and Form 10-K Reporting Responsibility |
| Exhibit J-1 | Form of Certification to Be Provided by the Depositor with Form 10-K |
| Exhibit J-2 | Form of Certification to Be Provided to the Depositor by the Indenture Trustee |
| Exhibit K | Form of Officer's Certificate Regarding Annual Statement of Compliance |
| Exhibit L | Form of Addition Notice |
| Exhibit M | Depositor's Subsequent Transfer Instrument |
| Exhibit N | Form of Additional Disclosure Notification |

iii

SALE AND SERVICING AGREEMENT, dated as of June 1, 2006 (this "Agreement"), by and among ACCREDITED MORTGAGE LOAN REIT TRUST, a Maryland real estate investment trust, as depositor (the "Depositor"), ACCREDITED HOME LENDERS, INC., a California corporation, as sponsor (the "Sponsor"), ACCREDITED MORTGAGE LOAN TRUST 2006-2, a Delaware statutory trust, as issuing entity (the "Issuing Entity"), ACCREDITED HOME LENDERS, INC., a California corporation, as servicer (the "Servicer"), and DEUTSCHE BANK NATIONAL TRUST COMPANY, a national banking association, as indenture trustee (the "Indenture Trustee").

W I T N E S S E T H

WHEREAS, the Sponsor has contributed the mortgage loans (the "Closing Date Mortgage Loans") listed on Schedule I to this Agreement to the Depositor, pursuant to the Contribution Agreements and Assignments, dated June 7, 2006, June 15, 2006, June 27, 2006 and June 28, 2006, between the Sponsor and the Depositor, (the "Contribution Agreements");

WHEREAS, the Depositor desires to sell to the Issuing Entity, and the Issuing Entity desires to purchase from the Depositor, the Closing Date Mortgage Loans;

WHEREAS, immediately after such purchase, the Issuing Entity will pledge such Closing Date Mortgage Loans to the Indenture Trustee pursuant to the terms of an Indenture, dated as of June 1, 2006 (the "Indenture"), between the Issuing Entity and the Indenture Trustee, and issue the Accredited Mortgage Loan Trust 2006-2, Asset-Backed Notes (the "Notes");

WHEREAS, the Servicer has agreed to service the Mortgage Loans, which constitute the principal assets of the Trust;

WHEREAS, the Indenture Trustee will hold the Mortgage Loans and certain other assets pledged to the Indenture Trustee pursuant to the Indenture;

WHEREAS, the Issuing Entity will enter into an interest rate swap agreement with the Swap Provider where the Issuing Entity agrees to pay certain fixed-rate amounts to the Swap Provider and the Swap Provider agrees to pay certain floating-rate amounts to the Trust; and

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the Depositor, the Sponsor, the Issuing Entity, the Servicer and the Indenture Trustee hereby agree as follows:

## ARTICLE I

## DEFINITIONS

Section 1.01. Certain Defined Terms. Capitalized terms used herein but not defined herein shall have the meanings ascribed to such terms in Appendix I attached hereto.

1

Section 1.02. Provisions of General Application.

(a) The terms defined herein and in Appendix I to the Indenture include the plural as well as the singular.

(b) The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Agreement as a whole. Unless otherwise noted, all references to Articles and Sections shall be deemed to refer to Articles and Sections of this Agreement.

(c) Any reference to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute to which reference is made and all regulations promulgated pursuant to such statutes.

(d) All calculations of interest with respect to the LIBOR Notes provided for herein shall be on the basis of a 360-day year and the actual number of days elapsed in the related Interest Accrual Period. All calculations of interest with respect to any Mortgage Loan provided for herein shall be made in accordance with the terms of the related Mortgage Note and Mortgage or, if such documents do not specify the basis upon which interest accrues thereon, on the basis of a 360 day year consisting of twelve 30-day months, to the extent permitted by applicable law.

(e) Any Mortgage Loan payment is deemed to be received on the date such payment is actually received by the Servicer; provided, however, that, for purposes of calculating payments on the Notes, prepayments with respect to any Mortgage Loan are deemed to be received on the date they are applied in accordance with Accepted Servicing Practices consistent with the terms of the related Mortgage Note and Mortgage to reduce the outstanding Principal Balance of such Mortgage Loan on which interest accrues.

## ARTICLE II

## SALE AND CONVEYANCE OF THE MORTGAGE LOANS

Section 2.01. Purchase and Sale of the Closing Date Mortgage Loans; Deposit of Derivatives.

(a) The Sponsor hereby directs the Depositor to sell, transfer, assign, set over and convey, and the Depositor does hereby sell, transfer, assign, set over and convey to the Issuing Entity, in each case without recourse, but subject to the terms and provisions of this Agreement, all of the right, title and interest of the Depositor in and to the Closing Date Mortgage Loans, including the Cut-Off Date Principal Balance of, and interest due on, such Closing Date Mortgage Loans listed on Schedule I attached hereto, and all other assets included or to be included in the Trust Estate (other than the Swap Agreement, which is being entered into directly by the Issuing Entity). The sale of the Closing Date Mortgage Loans will take place on the Closing Date, subject to and simultaneously with the deposit of the Closing Date Mortgage Loans and the Original Pre-Funded Amount and the Capitalized Interest Account into the Trust Estate, the authentication of the Notes by

the Indenture Trustee and the sale of the Notes pursuant to the Underwriting Agreement.

2

(b) The Depositor may cause the deposit of derivatives at any time into the Accredited Mortgage Loan Trust 2006-2 and any such deposited derivatives shall become part of the Trust Estate.

(c) The parties hereto understand and agree that it is not intended that any Mortgage Loan be included in the Issuing Entity that is a "High-Cost Home Loan" as defined by HOEPA or any other applicable predatory or abusive lending laws.

Section 2.02. Reserved.

Section 2.03. Purchase Price. On the Closing Date, as full consideration for the Depositor's sale of the Closing Date Mortgage Loans to the Issuing Entity, the Underwriters, on behalf of the Issuing Entity, will deliver to, or at the direction of, the Depositor an amount in cash equal to $1,394,265,880.00. Additionally, the Depositor will receive the Certificates issued by the Issuing Entity pursuant to the Trust Agreement.

Section 2.04. Possession of Mortgage Files; Access to Mortgage Files.

(a) Upon the receipt by the Depositor, or its designee, of the purchase price for the Closing Date Mortgage Loans set forth in Section 2.03 hereof, the ownership of each Mortgage Note, each Mortgage and the contents of the Mortgage File related to each Closing Date Mortgage Loan will be vested in the Issuing Entity, and will be pledged to the Indenture Trustee, for the benefit of the Noteholders.

(b) Pursuant to Section 2.05 hereof, the Depositor has delivered, or caused to be delivered the Indenture Trustee's Mortgage File related to each Closing Date Mortgage Loan to the Indenture Trustee.

(c) The Indenture Trustee will hold the Indenture Trustee's Mortgage Files in trust pursuant to the terms of the Indenture for the benefit of all present and future Noteholders and the Swap Provider.

(d) Consistent with the terms of the Indenture, the Indenture Trustee shall afford the Depositor, the Sponsor, the Issuing Entity and the Servicer reasonable access to all records and documentation regarding the Mortgage Loans relating to this Agreement, such access being afforded at customary charges, upon reasonable prior written request and during normal business hours at the offices of the Indenture Trustee.

(e) No later than the fifth Business Day of each fourth month, commencing in October 2006, the Indenture Trustee shall deliver to the Servicer a report dated as of the first day of such month, identifying those Mortgage Loans for which it has not yet received (i) an original recorded Mortgage or a copy thereof certified to be true and correct by the public recording office in possession of such Mortgage or (ii) in the event that Assignments of Mortgage are required to be recorded in accordance with the provisions of Section 2.05, an original recorded Assignment of Mortgage to the Indenture Trustee and any required intervening Assignments of Mortgage or a copy thereof certified to be a true and correct copy by the public recording office in possession of such Assignment of Mortgage.

3

Section 2.05. Delivery of Mortgage Loan Documents. (a) In connection with the transfer and assignment of the Mortgage Loans, the Depositor shall, on or before the Closing Date, in the case of a Closing Date Mortgage Loan and two business days prior to the related Subsequent Transfer Date in the case of a Subsequent Mortgage Loan, deliver, or cause to be delivered, to the Indenture Trustee (as pledgee of the Issuing Entity pursuant to the Indenture), the following documents or instruments constituting the Indenture Trustee's Mortgage File with respect to each Mortgage Loan so transferred or assigned:

(i) the original Mortgage Note, endorsed without recourse in blank or to "Deutsche Bank National Trust Company, as Indenture Trustee under the Indenture dated as of June 1, 2006, Accredited Mortgage Loan Trust 2006-2" by the Sponsor, including all intervening endorsements showing a complete chain of endorsement;

(ii) the related original Mortgage with evidence of recording indicated thereon or a copy thereof certified by the applicable recording office and if the Mortgage Loan is registered on the MERS System, such Mortgage or an assignment of the mortgage shall reflect MERS as the mortgagee of record and shall include the MIN for such Mortgage Loan;

(iii) each intervening mortgage assignment, with evidence of recording indicated thereon or if the original is not available, a copy thereof certified by the applicable recording office, if any, showing a complete chain of assignment from the originator of the related Mortgage Loan to the Sponsor (or to MERS, if the Mortgage Loan is registered on the

the Mortgage Loans for sale to prudent investors in the secondary market that invest in mortgage loans such as the Mortgage Loans.

(e) [Reserved.]

(f) Each Mortgaged Property is improved by a single (one to four) family residential dwelling, which may include condominiums, individual units in a planned unit development and townhouses but shall not include cooperatives.

(g) No Mortgage Loan had an LTV at origination in excess of 100%.

(h) Each Mortgage Loan is a valid, subsisting enforceable and perfected first lien as identified on the Mortgage Loan Schedule on the Mortgaged Property and subject in all cases to the exceptions to title set forth in the title insurance policy, with respect to the related Mortgage Loan, which exceptions are generally acceptable to banking institutions in connection with their regular mortgage lending activities, and such other exceptions to which similar properties are commonly subject and which do not individually, or in the aggregate, materially and adversely affect the benefits of the security intended to be provided by such Mortgage. At the time each Mortgage Loan was originated, the originator was a mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act or a savings and loan association, a savings bank, a commercial bank or similar banking institution which was supervised and examined by a federal or state authority or a mortgage banker or broker licensed or authorized to do business in the jurisdiction in which the related Mortgaged Property is located, applying the same standards and procedures used by the Sponsor in originating Mortgage Loans directly.

(i) Immediately prior to the transfer and assignment of the Mortgage Loans to the Depositor pursuant to the Contribution Agreements, the Sponsor held good and marketable title to, and was the sole owner of each Mortgage Loan, subject to no liens, charges, mortgages or encumbrances or rights of others, except liens of third party warehouse lenders that will be released simultaneously with the transfer and assignment contemplated herein; and immediately prior to the transfer and assignment herein contemplated, the Depositor held good and

20

marketable title to, and was the sole owner of, each Mortgage Loan subject to no liens, charges, mortgages, encumbrances or rights of others except liens which will be released simultaneously with such transfer and assignment; and immediately upon the transfer and assignment herein contemplated, the Indenture Trustee will hold good and marketable title to, and be the sole owner of, each Mortgage Loan subject to no liens, charges, mortgages, encumbrances or rights of others except liens which will be released simultaneously with such transfer and assignment.

(j) There is no delinquent tax or assessment lien on any Mortgaged Property, and each Mortgaged Property is free of substantial damage and is in good repair.

(k) There is no valid and enforceable right of rescission, set-off, defense or counterclaim to any Mortgage Note or Mortgage, including the obligation of the related Mortgagor to pay the unpaid principal of or interest on such Mortgage Note or the defense of usury, nor will the operation of any of the terms of the Mortgage Note or the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto.

(l) There is no mechanics' lien or claim for work, labor or material affecting any Mortgaged Property which is or may be a lien prior to, or equal with and no rights are outstanding that under the law gives rise to such liens, the lien of the related Mortgage except those which are insured against by any title insurance policy referred to in paragraph (n) below.

(m) Each Mortgage Loan at the time it was made complied with, and each Mortgage Loan at all times was serviced in compliance with, in each case, in all material respects, applicable local, state and federal laws and regulations, including, without limitation, the federal Truth-in-Lending Act and other consumer protection laws, the Home Ownership and Equity Protection Act of 1994, real estate settlement procedure, usury, equal credit opportunity, disclosure and recording laws and all applicable predatory and abusive lending laws.

(n) With respect to each Mortgage Loan, a lender's title insurance policy, issued in standard California Land Title Association form or American Land Title Association form, or other form acceptable in a particular jurisdiction by a title insurance company authorized to transact business in the state in which the related Mortgaged Property is situated, in an amount at least equal to the original Principal Balance of such Mortgage Loan insuring the mortgagee's interest under the related Mortgage Loan as the holder of a valid first mortgage lien of record on the real property described in the related Mortgage, as the case may be, subject only to exceptions of the character referred to in paragraph (h) above, was effective on the date of the origination of such Mortgage Loan, and, as of the Closing Date or relevant Subsequent Transfer Date such

Depositor's portfolio of fixed-rate or adjustable-rate mortgage loans, as applicable.

(zz) Each Mortgage Loan conforms, and all such Mortgage Loans in the aggregate conform in all material respects to the description thereof set forth in the Prospectus Supplement.

(aaa) All requirements for the valid transfer of each Insurance Policy, including any assignments or notices required in each Insurance Policy, have been satisfied.

(bbb) This Agreement creates a valid and continuing security interest (as defined in the applicable UCC) in the Mortgage Loans in favor of the Indenture Trustee, which security interest is prior to all other liens, and is enforceable as such as against creditors of and purchasers from the Depositor.

(ccc) The Mortgage Loans constitute "instruments" within the meaning of the applicable UCC.

(ddd) The Sponsor received all consents and approvals required by the terms of the Mortgage Loans to the contribution of the Mortgage Loans pursuant to the Contribution Agreements to the Depositor and the Depositor has received all consents and approvals required by the terms of the Mortgage Loans to the sale of the Mortgage Loans hereunder to the Owner Trustee and the subsequent pledge to the Indenture Trustee.

(eee) Other than the security interest granted to the Indenture Trustee pursuant to the Indenture, neither the Sponsor nor the Depositor has pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Mortgage Loans. Neither the Sponsor nor the Depositor has authorized the filing of nor is aware of any financing statements against the Sponsor or the Depositor that include a description of collateral covering the Mortgage Loans other than any financing statement relating to the security interest granted to the Indenture Trustee hereunder or that has been terminated. Neither the Sponsor nor the Depositor is aware of any judgment or tax lien filings affecting the Mortgage Loans against either the Depositor or the Sponsor.

26

(fff) All financing statements filed or to be filed against the Sponsor or the Depositor in favor of the Indenture Trustee in connection herewith describing the Mortgage Loans contain a statement to the following effect: "A purchase of or security interest in any collateral described in this financing statement will violate the rights of the Indenture Trustee."

(ggg) None of the Mortgage Loans are classified as (a) "high cost" loans under the Home Ownership and Equity Protection Act of 1994 or (b) "high cost," "threshold," "covered", "predatory" or "abusive" loans under any other applicable state, federal or local law (including without limitation any regulation or ordinance) (or a similarly classified loan using different terminology under a law imposing heightened regulatory scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees).

(hhh) No proceeds from any Mortgage Loan were used to finance single-premium credit insurance policies. With respect to each Mortgage Loan, no borrower obtained a prepaid single-premium credit-life, credit-disability, credit unemployment or credit property insurance policy in connection with the origination of the mortgage loan.

(iii) No Mortgage Loan is a "High Cost Home Loan" or "Covered Loan," as applicable, (as such terms are defined in the then current Standard & Poor's LEVELS Glossary which is now Version 5.6c Revised, Appendix E) and no Mortgage Loan originated on or after October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act. No Mortgage Loan that was originated on or after October 1, 2002 and before March 7, 2003 is secured by property located in the State of Georgia. There is no Mortgage Loan that was originated on or after March 7, 2003 which is a "high cost home loan" as defined under the Georgia Fair Lending Act.

(jjj) No Mortgage Loan is secured by a leasehold interest, unless such leasehold interest extends 60 months beyond the stated maturity of the Mortgage Note.

(kkk) There is no pending action or proceeding directly involving the Mortgaged Property in which compliance with any environmental law, rule or regulation is an issue. Based upon customary and prudent residential mortgage industry underwriting standards, there is no violation of any environmental law, rule or regulation with respect to the Mortgaged Property, and nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation constituting a prerequisite to use and enjoyment of said property.

(lll) The Mortgagor has not notified Accredited, and Accredited has no knowledge of any relief requested or allowed to the Mortgagor under the Servicemembers Civil Relief Act or any similar state statute.

(mmm) No Mortgage Loan was made in connection with the construction (other than a "construct to perm" loan) or rehabilitation of a Mortgaged Property or facilitating the trade in or exchange of a Mortgaged Property.

Section 3.03. [Reserved.]

Section 3.04. <u>Representations, Warranties and Covenants of the Indenture Trustee</u>. The Indenture Trustee hereby represents, warrants and covenants to the Issuing Entity, the Swap Provider, the Servicer, the Depositor and the Sponsor that as of the date of this Agreement and the subsequent Transfer Instruments or as of such date specifically provided herein:

(a) The Indenture Trustee is a national banking association duly organized, validly existing and in good standing under the laws of the United States of America;

(b) The Indenture Trustee has the requisite power and authority to execute, deliver and perform, and to enter into and consummate transactions contemplated by this Agreement;

(c) This Agreement has been duly and validly authorized, executed and delivered by the Indenture Trustee, all requisite action having been taken, and, assuming the due authorization, execution and delivery hereof by the other parties hereto, constitutes or will constitute the legal, valid and binding agreement of the Indenture Trustee, enforceable against the Indenture Trustee in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to or affecting the rights of creditors generally, and by general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law);

(d) No consent, approval, authorization or order of or registration or filing with, or notice to, any governmental authority or court is required for the execution, delivery and performance of or compliance by the Indenture Trustee with this Agreement or the consummation by the Indenture Trustee of any of the transactions contemplated hereby, except as have been made on or prior to the Closing Date;

16

(e) None of the execution and delivery of this Agreement, the consummation of the transactions contemplated hereby or thereby, or the fulfillment of or compliance with the terms and conditions of this Agreement, (i) conflicts or will conflict with or results or will result in a breach of, or constitutes or will constitute a default or results or will result in an acceleration under (A) the articles of association or bylaws of the Indenture Trustee, or (B) to the best of its knowledge, of any term, condition or provision of any material indenture, deed of trust, contract or other agreement or instrument to which the Indenture Trustee is a party or by which it is bound; or (ii) results or will result in a violation of any statute, rule, regulation, order, judgment or decree applicable to the Indenture Trustee of any court or governmental authority having jurisdiction over the Indenture Trustee or its subsidiaries which violation would materially and adversely affect the Indenture Trustee's performance of its duties hereunder; and

(f) There are no actions, suits or proceedings before or against or investigations of, the Indenture Trustee, pending or to the knowledge of the Indenture Trustee threatened, before any court, administrative agency or other tribunal, and no notice of any such action, which, in the Indenture Trustee's reasonable judgment, would materially and adversely affect the performance by the Indenture Trustee of its obligations under this Agreement, or the validity or enforceability of this Agreement.

It is understood and agreed that the representations, warranties and covenants set forth in this Section 3.04 shall survive delivery of the respective Indenture Trustee's Mortgage Files to the Indenture Trustee.

Section 3.05. <u>Covenants and Representations of the Sponsor and Servicer Regarding Prepayment Charges</u>.

(a) The Servicer covenants that it will not waive any Prepayment Charge or part of a Prepayment Charge unless in connection with a Mortgage Loan that is in default or for which a default is reasonably foreseeable.

(b) The Sponsor hereby represents and warrants that the information set forth in the Prepayment Charge Schedule is complete, true and correct in all material respects at the date or dates respecting which such information is furnished and each Prepayment Charge is permissible and enforceable in accordance with its terms (except to the

extent that the enforceability thereof may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws relating to creditors' rights generally) under applicable law.

(c) Upon discovery by the Sponsor or the Indenture Trustee of a breach of the foregoing, the party discovering such breach shall give prompt written notice to the other parties. Within 60 days of the earlier of discovery by the Servicer or receipt of notice by the Servicer of breach, the Servicer shall cure such breach in all material respects. If the covenant made by the Servicer in clause (a) above is breached the Servicer must pay into the Collection Account the amount of the waived Prepayment Charge. If the representation made by the Sponsor in clause (b) above is breached, the Sponsor must pay into the Collection Account the amount of the scheduled Prepayment Charge, less any amount previously collected and paid by the Servicer into the Collection Account. The foregoing obligations of the Servicer and the Sponsor shall be the sole and exclusive remedies for a breach of this Section 3.05(a) or (b).

27

(nnn) Accredited has complied with all applicable anti money laundering laws and regulations, including without limitation the USA Patriot Act of 2001 (collectively, the "Anti-Money Laundering Laws").

(ooo) No Mortgage Loan imposes a Prepayment Charge for a term in excess of five years.

(ppp) No Mortgage Loan is a "High-Cost Home Loan" as defined in the New Jersey Home Ownership Act, effective as of November 27, 2003, or the Home Loan Protection Act of New Mexico, effective as of January 1, 2004.

(qqq) No Mortgage Loan is a "High-Cost Home Loan" as defined in the Massachusetts Predatory Home Loan Practice Act effective November 7, 2004 (MA House Bill 4880).

(rrr) [Reserved.]

(sss) A breach of any one of the representations set forth in paragraphs (ggg), (hhh), (iii) and (qqq) above, will be deemed to materially and adversely affect the interests of the Noteholders and shall require a repurchase of the affected Mortgage Loan pursuant to Section 4.02.

It is understood and agreed that the representations, warranties and covenants set forth in this Section 4.01 shall survive delivery of the respective Indenture Trustee's Mortgage Files to the Indenture Trustee and shall inure to the benefit of the Indenture Trustee on behalf of the Noteholders.

Section 4.02. Purchase and Substitution. (a) It is understood and agreed that the representations and warranties set forth in Section 4.01 shall survive the transfer of the Mortgage Loans by the Depositor to the Issuing Entity, the subsequent pledge thereof by the Issuing Entity to the Indenture Trustee, for the benefit of the Noteholders, and the delivery of the Notes to the Noteholders, and shall continue in full force and effect, notwithstanding any restrictive or qualified endorsement on the Mortgage Notes and notwithstanding subsequent termination of this Agreement.

(b) Upon discovery by the Depositor, the Sponsor, the Servicer, the Indenture Trustee or a Noteholder of a breach of any of the representations and warranties in Section 4.01 which materially and adversely affects the value of any Mortgage Loan, or which materially and adversely affects the interests of the Noteholders in the related Mortgage Loan, the party discovering such breach or failure shall promptly (and in any event within five (5) days of the discovery) give written notice thereof to the others. Within sixty (60) days of the earlier of its discovery or its receipt of notice of any breach of a representation or warranty, the Depositor shall, and if the Depositor fails to, then the Sponsor shall (a) promptly cure such breach in all material respects, (b) purchase such Mortgage Loan on a Servicer Remittance Date, in the manner and at the price specified in Section 2.06(b) and this Section 4.02, or (c) remove such Mortgage Loan from the Trust Estate (in which case it shall become a Deleted Mortgage Loan) and substitute one or more Qualified Substitute Mortgage Loans in the manner specified in Section 2.06 and this Section 4.02. The Indenture Trustee shall deliver prompt written notice to the Rating Agencies of any repurchase or substitution made pursuant to this Section 4.02 or Section 2.06(b).

28

(c) As to any Deleted Mortgage Loan for which the Depositor or the Sponsor substitutes a Qualified Substitute Mortgage Loan or Loans, the Servicer shall cause the Depositor or Sponsor to effect such substitution by delivering to the Indenture Trustee a certification, in the form attached hereto as Exhibit F, executed by a Servicing Officer, and the documents described in Sections 2.05(a)(i)-(vi) for such Qualified Substitute Mortgage Loan or Loans.

(d) The Servicer shall deposit in the Collection Account all payments received in connection with such Qualified Substitute Mortgage Loan or Loans after the date of such substitution. Monthly Payments due with respect to Qualified Substitute Mortgage Loans in or before the Due Period in which the substitution occurs shall not be part of the Trust Estate and will be retained by the Sponsor on the next succeeding Payment Date. For the Due Period in which the substitution occurs, distributions to Noteholders will include the Monthly Payment due on any Deleted Mortgage Loan for such Due Period and thereafter the Sponsor shall be entitled to retain all amounts received in respect of such Deleted Mortgage Loan. The Servicer shall give written notice to the Indenture Trustee that such substitution has taken place and shall amend the Mortgage Loan Schedule to reflect the removal of such Deleted Mortgage Loan from the terms of this Agreement and the substitution of the Qualified Substitute Mortgage Loan or Loans. Upon such substitution, such Qualified Substitute Mortgage Loan or Loans shall be subject to the terms of this Agreement in all respects.

(e) With respect to any Mortgage Loan that has been converted to an REO Mortgage Loan, all references in this Section 4.02 or Section 2.06 to "Mortgage Loan" shall be deemed to also refer to the REO Mortgage Loan. With respect to any Mortgage Loan that the Depositor and Sponsor are required to repurchase that is or becomes a Liquidated Mortgage

# ARTICLE VII

## SERVICER DEFAULT

Section 7.01. Servicer Events of Default. (a) The following events shall each constitute a "Servicer Event of Default" hereunder:

(i) any failure by the Servicer to remit to the Indenture Trustee any payment required to be made by the Servicer under the terms of this Agreement (other than Servicing Advances covered by clause (ii) below and Delinquency Advances, which

55

shall have no cure period), which continues unremedied for one (1) Business Day after the date upon which notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Indenture Trustee or to the Servicer and Indenture Trustee by the Noteholders affected thereby evidencing Percentage Interests of at least 25%; provided however that any failed remittance cured within one Business Day of such failure shall include interest accrued at the Prime Rate (as set forth in the Wall Street Journal) on the amount of such remittance from and including the date the remittance was required to be made to and including the date the remittance was actually made;

(ii) the failure by the Servicer to make any required Servicing Advance, which failure continues unremedied for a period of thirty (30) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Indenture Trustee or to the Servicer and the Indenture Trustee by the Noteholders affected thereby evidencing Percentage Interests of at least 25%;

(iii) any failure on the part of the Servicer duly to observe or perform in any material respect any other covenants or agreements on the part of the Servicer contained in this Agreement, or the failure of any representation and warranty made pursuant to Section 3.01(a) hereof to be true and correct which continues unremedied for a period of thirty (30) days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Indenture Trustee or to the Servicer and the Indenture Trustee by the Noteholders affected thereby evidencing Percentage Interests of at least 25%;

(iv) a decree or order of a court or agency or supervisory authority having jurisdiction in an involuntary case under any present or future federal or state bankruptcy, insolvency or similar law or for the appointment of a conservator or receiver or liquidation in any insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Servicer and such decree or order shall have remained in force, undischarged or unstayed for a period of ninety (90) days;

(v) the Servicer shall consent to the appointment of a conservator or receiver or liquidator in any insolvency, readjustment of debt, marshalling of assets and liabilities or similar proceedings of or relating to the Servicer or of or relating to all or substantially all of the Servicer's property;

(vi) the Servicer shall admit in writing its inability generally to pay its debts as they become due, file a petition to take advantage of any applicable insolvency or reorganization statute, make an assignment for the benefit of its creditors, or voluntarily suspend payment of its obligations;

(vii) if on any Payment Date the Rolling Six Month Delinquency Ratio exceeds 23.80%;

56

(viii) if on any Payment Date, the Cumulative Realized Loss Percentage exceeds the following percentages on any Payment Date during the following periods:

| Payment Date Occurring During | Percentage |
| --- | --- |
| July 2009 to June 2010 | 6.50% |
| July 2010 to June 2011 | 7.00% |

| | |
|---|---|
| July 2011 to June 2012 | 7.50% |
| July 2012 and thereafter | 8.00% |

(ix) the occurrence of an Event of Default under the Indenture.

So long as a Servicer Event of Default shall have occurred and not have been remedied: (x) with respect solely to Section 7.01(a)(i), if such payment is in respect of Delinquency Advances or Compensating Interest owing by the Servicer and such payment is not made by 12:00 noon New York time on the second Business Day prior to the applicable Payment Date, the Indenture Trustee, upon receipt of written notice or actual knowledge by a Responsible Officer of the Indenture Trustee of such failure, shall give immediate telephonic and facsimile notice of such failure to a Servicing Officer of the Servicer and the Indenture Trustee may, and upon request of the Holders representing more than 50% of the Class Note Balance, shall, terminate all of the rights and obligations of the Servicer under this Agreement, except for the Servicer's indemnification obligation under Section 5.19, and the Indenture Trustee (if it is the successor servicer) or a successor servicer appointed in accordance with Section 7.02, shall immediately make such Delinquency Advance or payment of Compensating Interest as provided in Section 7.02 and assume, pursuant to Section 7.02 hereof, the duties of a successor servicer; (y) with respect to that portion of Section 7.01(a)(i) not referred to in the preceding clause (x) and with respect to clauses (ii), (iii), (iv), (v), (vi) and (xii) of Section 7.01(a), upon receipt of written notice or actual knowledge by a Responsible Officer of the Indenture Trustee, the Indenture Trustee shall, but only at the direction of the Majority Noteholders, by notice in writing to the Servicer and a Responsible Officer of the Indenture Trustee, and in addition to whatever rights such Noteholders may have at law or equity to damages, including injunctive relief and specific performance, terminate all the rights and obligations of the Servicer under this Agreement, except for the Servicer's indemnification obligations under Section 5.19, and in and to the Mortgage Loans and the proceeds thereof, as Servicer; and (z) with respect to clauses (vii)-(ix) of Section 7.01(a), upon receipt of written notice or actual knowledge by a Responsible Officer of the Indenture Trustee, the Indenture Trustee shall, after notice in writing to the Servicer and a Responsible Officer of the Indenture Trustee, terminate all the rights and obligations of the Servicer under this Agreement, except for the Servicer's indemnification obligations under Section 5.19, and in and to the Mortgage Loans and the proceeds thereof, as Servicer. Upon receipt by the Servicer of such written notice, all authority and power of the Servicer under this Agreement, whether with respect to the Mortgage Loans or otherwise, shall, subject to Section 7.02, pass to and be vested in another successor servicer, and another successor servicer is hereby authorized and empowered to execute and deliver, on behalf of the Servicer, as attorney-in-fact or otherwise, at the expense of the Servicer, any and all documents and other instruments and do or cause to be done all other acts or things necessary or appropriate to effect the purposes of such notice of termination, including, but not limited to, the transfer and endorsement or assignment of the Mortgage Loans and related documents. The Servicer agrees to cooperate (and to pay any related costs and expenses) with the Indenture Trustee or another

57

successor servicer in effecting the termination of the Servicer's responsibilities and rights hereunder, including, without limitation, the transfer to another successor servicer, for administration by it of all amounts which shall at the time be credited by the Servicer to the Collection Account or thereafter received with respect to the Mortgage Loans. The Indenture Trustee shall promptly notify the Rating Agencies and the Swap Provider of the occurrence of a Servicer Event of Default upon discovery or receipt of notice by a Responsible Officer of the Indenture Trustee; provided, however, the Indenture Trustee shall not be obligated to monitor the Servicer's compliance with the terms hereof or to determine the occurrence of any Servicer Event of Default.

Section 10.02. <u>Acts of Noteholders</u>. (a) Subject to Section 7.04 and except as otherwise specifically provided herein, whenever Noteholder action, consent or approval is required under this Agreement, such action, consent or approval shall be deemed to have been taken or given on behalf of, and shall be binding upon, all Noteholders if the Majority Noteholders agree to take such action or give such consent or approval.

63

(b) The death or incapacity of any Noteholder shall not operate to terminate this Agreement or the Issuing Entity, nor entitle such Noteholder's legal representatives or heirs to claim an accounting or to take any action or proceeding in any court for a partition or winding up of the Issuing Entity, nor otherwise affect the rights, obligations and liabilities of the parties hereto or any of them.

(c) No Noteholder shall have any right to vote (except as expressly provided for herein) or in any manner otherwise control the operation and management of the Issuing Entity, or the obligations of the parties hereto, nor shall anything herein set forth, or contained in the terms of the Notes, be construed so as to constitute the Noteholders from time to time as partners or members of an association; nor shall any Noteholder be under any liability to any third person by reason of any action taken by the parties to this Agreement pursuant to any provision hereof.

Section 10.16. GOVERNING LAW; CONSENT TO JURISDICTION; WAIVER OF JURY TRIAL. (a) THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS (AS OPPOSED TO CONFLICT OF LAWS PROVISIONS) OF THE STATE OF NEW YORK.

(b) THE TRUST, THE SERVICER, THE DEPOSITOR, THE SPONSOR, THE INDENTURE TRUSTEE HEREBY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE UNITED STATES DISTRICT COURT LOCATED IN THE BOROUGH OF MANHATTAN IN NEW YORK CITY, AND WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS UPON IT AND CONSENTS THAT ALL SUCH SERVICE OF PROCESS BE MADE BY REGISTERED MAIL DIRECTED TO THE ADDRESS SET FORTH IN SECTION 10.06 HEREOF AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED FIVE (5) DAYS AFTER THE SAME SHALL HAVE BEEN DEPOSITED IN THE U.S. MAILS, POSTAGE PREPAID. THE ISSUER, THE DEPOSITOR, THE SPONSOR, THE SERVICER AND THE INDENTURE TRUSTEE EACH HEREBY WAIVE ANY OBJECTION BASED ON FORUM NON CONVENIENS, AND ANY OBJECTION TO VENUE OF ANY ACTION INSTITUTED HEREUNDER AND CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT. NOTHING IN THIS SECTION 10.15 SHALL AFFECT THE RIGHT OF THE ISSUER, THE DEPOSITOR, THE SPONSOR, THE SERVICER OR THE INDENTURE TRUSTEE TO SERVE LEGAL PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR AFFECT ANY OF THEIR RIGHTS TO BRING ANY ACTION OR PROCEEDING IN THE COURTS OF ANY OTHER JURISDICTION.

(c) THE ISSUER, THE DEPOSITOR, THE SPONSOR, THE SERVICER, THE INDENTURE TRUSTEE AND THE SWAP PROVIDER EACH HEREBY WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE ARISING OUT OF, CONNECTED WITH, RELATED TO, OR IN CONNECTION WITH THIS AGREEMENT.

67

INSTEAD, ANY DISPUTE WILL BE RESOLVED IN A BENCH TRIAL WITHOUT A JURY.

of any such Mortgage Loan.

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the above-captioned Sale and Servicing Agreement.

DEUTSCHE BANK NATIONAL TRUST
COMPANY,
as Indenture Trustee

By: _____

Name:

Title:

D-1

---

EXHIBIT E

FINAL CERTIFICATION OF INDENTURE TRUSTEE

_____, 2006

Goldman, Sachs & Co.                           Accredited Home Lenders, Inc.
85 Broad Street                                15090 Avenue of Science
New York, New York 10004                       San Diego, California 92128
Accredited Mortgage Loan REIT Trust
15090 Avenue of Science
San Diego, California 92128

Re:    Sale and Servicing Agreement, dated as of June 1, 2006 among Accredited Home Lenders, Inc., as Sponsor and
       Servicer,
       Accredited Mortgage Loan REIT Trust, as depositor, Accredited Mortgage Loan Trust 2006-2, and Deutsche Bank
       National
       Trust Company, as Indenture Trustee

Ladies and Gentlemen:

In accordance with the provisions of Section 2.06(b)(iii) of the above-referenced Sale and Servicing Agreement, the undersigned, as Indenture Trustee, hereby certifies that as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or any Mortgage Loan listed on the attachment hereto), it has reviewed the documents delivered to it pursuant to Section 2.05(a) of the Sale and Servicing Agreement and has determined that (i) all documents required to be delivered to it pursuant to Section 2.05(a)(i)-(iv) and (vi) of the above referenced Sale and Servicing Agreement are in its possession, (ii) such documents have been reviewed by it and appear regular on their face and have not been mutilated, damaged, torn or otherwise physically altered (handwritten additions, changes or corrections do not constitute physical alteration if they reasonably appear to have been initialed by the Mortgagor) and relates to such Mortgage Loan and (iii) based on its examination and only as to the foregoing documents, the information set forth in items (i), (ii) (with respect to property address only, excluding zip code), (iii) and (vi) of the definition of the Mortgage Loan Schedule respecting such Mortgage Loan that can be determined from the face of such documents accurately reflects the information set forth in the Indenture Trustee's Mortgage File. The Indenture Trustee has made no independent examination of such documents beyond the review specifically required in the above-referenced Sale and Servicing Agreement. The Indenture Trustee makes no representations as to: (x) the validity, legality, recordability, sufficiency, perfection, priority, enforceability or genuineness of any such documents contained in each or any of the Mortgage Loans identified on the Mortgage Loan Schedule, or (y) the collectability, insurability, effectiveness or suitability of any such Mortgage Loan.

Capitalized words and phrases used herein shall have the respective meanings assigned to them in the above-captioned Sale and Servicing Agreement.

DEUTSCHE BANK NATIONAL TRUST
COMPANY,
as Indenture Trustee

*In re Debtor: James L Macklin*
USBC Eastern District of California Case No: 10-44610
Debtor's Opposition to Motion for Relief from Stay (Unlawful Detainer)
Declaration of James L. Macklin

**EXHIBIT "C-1"**

Recording Requested L,
Title Court Service

Recording requested by:

PLACER, County Recorder
JIM MCCAULEY
DOC- 2009-0018889-00
Acct 100-TITLE COURT SERVICE,INC
Tuesday, MAR 10, 2009 09:31:54
MIC   $3.00:AUT    $3.00:SBS    $2.00
ERD   $1.00:RED    $1.00:REC    $5.00
Ttl Pd   $15.00    Rcpt # 0001893924
                             J1f/JL/1-3

When recorded mail to:
Windsor Management, Co.
15253 Avenue of Science
San Diego, CA 92128

Space above this line for recorders use

TS # CA-08-01507-CS          Order # 080122247-CA-LGI          Loan # 0603307230

## Substitution of Trustee

WHEREAS, JAMES LEN MACKLIN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY was the original Trustor, FINANCIAL TITLE COMPANY was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., A CALIFORNIA CORPORATION was the original Beneficiary under that certain Deed of Trust dated 4/14/2006 and recorded on 4/28/2006 as Instrument No. 2006-0046431, in book xxx, page xxx of Official Records of PLACER County CA; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes Windsor Management Co.,as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Page 1

Substitution of Trustee - CA
TS # CA-08-01507-CS
Page 2

Dated: 1/30/08

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC., AS NOMINEE FOR ACCREDITED HOME LENDERS
INC., A CALIFORNIA CORPORATION

By:   Joseph Sanfilippo

State of CALIFORNIA           )
County of SAN DIEGO           )

On  MARCH  4          , 2009 before me, _____Christiana Juarez_____, personally
appeared  JOSEPH SANFILIPPO      , who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/the
signature(s) in the instrument the person(s), or the entity upon behalf of which person(s) acted, executed
the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

CHRISTIANA JUAREZ
Commission # 1725861
Notary Public - California
San Diego County
My Comm. Expires Feb 18, 2011

## Affidavit of Mailing
## for Substitution of Trustee By Code

TS No.: **CA-08-01507-CS**
Trustor: JAMES LEN MACKLIN, A MARRIED MAN AS HIS SOLE AND SEPARATE
PROPERTY

I, Cindi Stewart, declare: That I am an officer, agent or employee of **Windsor Management** Co.
whose business address is:

      15253 Avenue of Science
      San Diego, CA 92128

I am over the age of eighteen years; On 3/9/2009, by Certified and First Class mail, enclosed in
a sealed envelope with postage fully prepaid, I deposited in the United States Mail, a copy of
the attached Substitution of Trustee to the trustee of record under the Deed of Trust described
in said Substitution, and;

A copy of the attached Substitution has been mailed prior to the recording thereof, in the
manner provided in Section 2924(b) of the Civil Code of the State of California to all persons to
whom a copy of the Notice of Default would be required to be mailed by the provisions of said
section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

Date: 3/9/2009

_Cindi Stewart_

Cindi Stewart

*In re Debtor:  James L Macklin*
USBC Eastern District of California Case No:  10-44610
Debtor's Opposition to Motion for Relief from Stay (Unlawful Detainer)
Declaration of James L. Macklin

**EXHIBIT "C-2"**

Recording Requested By:
Title Court Service

PLACER, County Recorder
JIM MCCAULEY
DOC- 2009-0101490-00
Acct 100-TITLE COURT SERVICE,INC
Wednesday, NOV 25, 2009 08:52:08
MIC    $3.00 AUT    $3.00 SBS    $2.00
ERD    $1.00 RED    $1.00 REC    $5.00
Ttl Pd    $15.00    Rcpt # 0001995323
                        ocg/CG/1-3

Recording requested by:

When recorded mail to:

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711

---

Space above this line for recorders use

TS # CA-09-304774-RT          Order # 090576095-CA-DCI
MERS MIN No.:
100176106033072308

## Substitution of Trustee

WHEREAS, JAMES LEN MACKLIN , A MARRIED MAN AS HIS SOLE AND
SEPARATE PROPERTY was the original Trustor, FINANCIAL TITLE COMPANY was the
original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
NOMINEE FOR ACCREDITED HOME LENDERS, INC. A CALIFORNIA CORPORATION A
CORPORATION was the original Beneficiary under that certain Deed of Trust dated 4/14/2006
and recorded on 4/28/2006 as Instrument No. 2006-0046431, in book xxx, page xxx of Official
Records of PLACER County, CA; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of
Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the
manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes QUALITY LOAN SERVICE
CORPORATION ,as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or
neuter, and the singular number includes the plural.

"This instrument is being recorded as an
ACCOMMODATION ONLY, with no
Representation as to its effect upon title"

Page 1

4

ω

Substitution of Trustee - CA
TS # CA-09-304774-RT
Page 2

Dated:

8-21-09

          Deutsche Bank National Trust Company, as Indenture
          Trustee, on behalf of the holders of the Accredited
          Mortgage Loan Trust 2006-2 Asset Backed Notes by
          Select Portfolio Servicing, Inc as Attorney in Fact

By: _____

        **Wayne Hessler**

        **Duly Appointed Officer**

State of Minnesota
County of Dakota )

On ____8-21-09____ Date before me, _____~~Mark Bischof~~_____ a notary public, personally
appeared _____Wayne Hessler_____ who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___MN___
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

                                **MARK BISCHOF**
                          NOTARY PUBLIC - MINNESOTA
                          MY COMMISSION
                          EXPIRES JAN. 31, 2013

See Attached "Exhibit A"

**Exhibit "A"**
Affidavit of Mailing
for Substitution of Trustee By Code

TS No.: **CA-09-304774-RT**
Trustor: JAMES LEN   MACKLIN , A MARRIED MAN AS HIS SOLE AND SEPARATE
PROPERTY

I, Ryan McKenzie, declare: That I am an employee of **Quality Loan Service Corp.**, an agent
for beneficiary, whose business address is:

      2141 5th Avenue
      San Diego, CA 92101

I am over the age of eighteen years and in accordance with California Civil Code Section 2934,
I caused a copy of the attached Substitution of Trustee to be mailed, in the manner provided in
Section 2924(b) of the Civil Code of the State of California, to the trustee of record under the
Deed of Trust described in said Substitution and to all persons to whom a copy of the Notice of
Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.  Executed at San Diego, CA on 11/23/2009.


/s/ _____
Ryan McKenzie

*In re Debtor:  James L Macklin*
USBC Eastern District of California Case No:  10-44610
Debtor's Opposition to Motion for Relief from Stay (Unlawful Detainer)
Declaration of James L. Macklin

**EXHIBIT "C-3"**

Recording Requested By:
Title Court Service

Recording Requested By:
SELECT PORTFOLIO SERVICING, INC.

When Recorded Return To:

BILL KOCH
SELECT PORTFOLIO SERVICING, INC
3815 SW TEMPLE
SALT LAKE CITY, UT 84115

0905760.5

PLACER, County Recorder
JIM MCCAULEY
DOC- 2009-0101918-00
Acct 100-TITLE COURT SERVICE,INC
Monday, NOV 30, 2009 08:00:00
MIC    $3.00:AUT    $2.00:SBS    $1.00
ERD    $1.00:RED    $1.00:REC    $4.00
Ttl Pd    $12.00    Rcpt # 0001995884
jlc/JC/1-2

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Placer, California    SELLER'S SERVICING #: 0011896883    "MACKLIN"
INVESTOR #: U20
MERS #: 100176106033072308

For Value Received, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., A CALIFORNIA CORPORATION, A CORPORATION hereby grants, assigns and tranfers to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE, ON BEHALF OF THE HOLDERS OF THE ACCREDITED MORTGAGE LOAN TRUST 2006-2 ASSET BACKED NOTES at 3815 SW TEMPLE, SALT LAKE CITY, UT 84115 all beneficial interest under that certain Deed of Trust dated 04/14/2006 , in the amount of $532,000.00, executed by JAMES LEN MACKLIN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY. to MERS AS NOMINEE FOR ACCREDITED HOME LENDERS, INC. A CALIFORNIA CORPORATION and Recorded: 04/28/2006 as Instrument No.: 2006-0046431 in Placer County , State of California

Together with the note or notes therein described or referred to, in said Deed of Trust, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., A CALIFORNIA CORPORATION, A CORPORATION
On NOV 17 2009                    Nov 17 2009

Bill Koch, Assistant Secretary

This instrument is being recorded as an ACCOMMODATION ONLY, with no Representation as to its effect upon title

STATE OF Utah
COUNTY OF Salt Lake

On NOV 17 2009 , before me, SHIRLEY TUITUPOU, a Notary Public in and for Salt Lake in the State of Utah, personally appeared Bill Koch, Assistant Secretary, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., A CALIFORNIA CORPORATION, A CORPORATION, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,    Public in and for Salt Lake

SHIRLEY TUITUPOU
Notary Expires: 11/12/2012  #576792

SHIRLEY TUITUPOU
Notary Public State of Utah
My Commission Expires on:
November 12, 2012
Comm. Number: 576792

(This area for notarial seal)

*SOM*SOMAMRC*11/13/2009 03:55:27 PM* AMRC83AMRC00000000000000000381430* CAPLACE* 0011896883 CASTATE_TRUST_ASSIGN_ASSN *ACK*ACKAMRC*

# CERTIFICATE OF ILLEGIBILITY
## Government Code 27361.7

I certify under penalty of perjury under the laws of the State of California that the Notary Seal on the document to which this statement is attached reads as follows:

Name of Notary: _Shirley Tuitupow_

Date Commission Expires: _~~12~~ 11/12/12_

Commission Number: _576792_

County of Commission: _Salt Lake_

State of Commission: _Utah_

Manufacturer Number: _____
   (In California this number is on the left and right side of the seal.)

Place of Execution: _Auburn, Ca_

Signature: _____   Date: _11/30/09_

*In re Debtor:  James L Macklin*
USBC Eastern District of California Case No:  10-44610
Debtor's Opposition to Motion for Relief from Stay (Unlawful Detainer)
Declaration of James L. Macklin

**EXHIBIT "D"**

Recording Requested By:
Title Court Service

Recording requested by:

When recorded mail to:

Windsor Management Co.
15253 Avenue of Science
Building #3
San Diego, CA 92128

08012247

TS No.: CA-08-01507-CS                              Loan No.: 0603307230

PLACER, County Recorder
JIM MCCAULEY
DOC- 2008-0094154-00
Acct 100-TITLE COURT SERVICE, INC
Monday, DEC 08, 2008 08:55:20
MIC     $3.00:AUT     $2.00:SBS     $1.00
BRO     $1.00:RED     $1.00:REC     $4.00
Ttl Pd     $12.00     Rcpt # 0001862149
                                baJ/BJ/1-2

Space above this line for Recorder's use

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is $21,168.60 as of 12/4/2008 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Accredited Home Lenders, Inc.**
**C/O Windsor Management Co.**
**15253 Avenue of Science**
**San Diego, CA 92128**
**1-858-451-7322**

7

Branch :F09,User :3031                                  Comment:                                                Station Id :OXBZ

TS No.: CA-08-01507-CS
Loan No.: 0603307230
**Notice of Default and Election To Sell Under Deed of Trust**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 4/14/2006, executed by JAMES LEN MACKLIN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR ACCREDITED HOME LENDERS, INC., A CALIFORNIA CORPORATION, as beneficiary, recorded 4/28/2006, as Instrument No. 2006-0046431, in Book xxx, Page xxx of Official Records in the Office of the Recorder of PLACER County, California describing land therein: as more fully described in said Deed of Trust.

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $532,000.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of principal and interest plus impounds and / or advances which became due on 9/1/2008 plus amounts that are due or may become due for the following: late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The Beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2935.5

Dated: 12/4/2008                    **Windsor Management Co., AS AGENT FOR BENEFICIARY**
                                     BY: LSI Title Company

CATHY GARCIA

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

*In re Debtor:  James L Macklin*
USBC Eastern District of California Case No:  10-44610
Debtor's Opposition to Motion for Relief from Stay (Unlawful Detainer)
Declaration of James L. Macklin

**EXHIBIT "E"**

| | |
|---|---|
| **1IssueID** | AC0602 |
| **Period** | 201007 |
| **LoanNumber** | 603307230 |
| **Name** | |
| **Address** | |
| **City** | AUBURN |
| **State** | CA |
| **ZipCd** | 95603 |
| **PropertyType** | 1 |
| **OwnerOccupied** | O |
| **LoanPurpose** | C |
| **LoanType** | 1 |
| **BalloonFlag** | N |
| **LoanStat** | 0 |
| **OrigTerm** | 360 |
| **AmortTerm** | 360 |
| **FrstPmtDt** | 6/1/2006 |
| **MatDt** | 5/1/2036 |
| **Appraisal** | 665000 |
| **LTV** | 80 |
| **OrigBal** | 532000 |
| **InitBal** | 532000 |
| **BegBal** | 532000 |
| **EndBal** | 532000 |
| **PrepayDt** | |
| **PrepayStat** | 0 |
| **PrepayAmt** | 0 |
| **OrigSchPI** | 2715.42 |
| **InitSchPI** | 2715.42 |
| **SchPI** | 2715.42 |
| **SchIntAmt** | 2715.42 |
| **SchPrinAmt** | 0 |
| **Curtailment** | 0 |
| **OrigNoteRate** | 6.125 |
| **InitNoteRate** | 6.125 |
| **CurrNoteRate** | 6.125 |
| **NextNoteRate** | 6.125 |
| **TotalStripRates1** | 0.51 |
| **TotalStripRates2** | 0.51 |
| **CurrPTR** | 5.622 |
| **NextPTR** | 5.622 |
| **PaidToDt** | 8/1/2008 |
| **CurrPmtDt** | 7/1/2010 |
| **NextPmtDt** | 8/1/2010 |
| **IndexType** | 0 |
| **GrossMargin** | 0 |
| **OrigIndex** | 0 |
| **CurrIndex** | 0 |
| **NextIndex** | 0 |
| **FrstAdjDt** | |
| **CurrRateAdj** | |
| **NextRateAdj** | |
| **AdjFreq** | 0 |
| **PeriodCap** | 0 |
| **LifeMax** | 0 |
| **LifeMin** | 0 |
| **FrstPmtAdj** | |
| **PrepayPenEndDate** | |
| **NA** | |
| **AdjFreqPmt** | 0 |
| **PerCapPmt** | 0 |

Loan Number 603307230 for James Macklin from the July 2010 Distribution to Certificateholders

| | | |
|---|---|---|
| **SubPool** | | 1 |
| **BankCd** | | 0 |
| **Delinq** | | 3 |
| **Status** | N | |
| **PerCapUpDwn** | | 0 |
| **LiqDt** | | |
| **RealLoss** | | 0 |
| **Proceeds** | | 0 |
| **PrepayPenalty** | | 0 |
| **FrstPrinPmtDt** | | 6/1/2011 |

*In re Debtor: James L Macklin*
USBC Eastern District of California Case No: 10-44610
Debtor's Opposition to Motion for Relief from Stay (Unlawful Detainer)
Declaration of James L. Macklin

**EXHIBIT "F"**

**EXECUTION VERSION**

INDENTURE

dated as of June 1, 2006

by and between

ACCREDITED MORTGAGE LOAN TRUST 2006-2,

as Issuing Entity

and

DEUTSCHE BANK NATIONAL TRUST COMPANY

as Indenture Trustee

lieu of cash up to the amount that shall, upon distribution of the net proceeds of such Sale, be payable thereon, and such Notes, in case the amounts so payable thereon shall be less than the amount due thereon, shall be returned to the Holders thereof after being appropriately stamped to show such partial payment;

(ii)    the Indenture Trustee may bid for and acquire the property offered for Sale in connection with any public Sale thereof, and, in lieu of paying cash therefor, may make settlement for the purchase price by crediting the gross Sale price against the sum of (a) the amount that would be payable to the Holders of the Notes as a result of such Sale in accordance with Section 5.07 hereof on the Payment Date next succeeding the date of such Sale and (b) the expenses of the Sale and of any Proceedings in connection therewith which are reimbursable to it, without being required to produce the Notes in order to complete any such Sale or in order for the net Sale price to be credited against such Notes, and any property so acquired by the Indenture Trustee shall be held and dealt with by it in accordance with the provisions of this Indenture;

(iii)    the Indenture Trustee shall execute and deliver an appropriate instrument of conveyance transferring its interest in any portion of the Trust Estate in connection with a Sale thereof;

(iv)    the Indenture Trustee is hereby irrevocably appointed the agent and attorney in-fact of the Issuing Entity to transfer and convey its interest in any portion of the Trust Estate in connection with a Sale thereof, and to take all action necessary to effect such Sale; and

(v)    no purchaser or transferee at such a Sale shall be bound to ascertain the Indenture Trustee's authority, inquire into the satisfaction of any conditions precedent or see to the application of any moneys.

Section 5.18.    Action on Notes.  The Indenture Trustee's right to seek and recover judgment under this Indenture shall not be affected by the seeking, obtaining or application of any other relief under or with respect to this Indenture.  Neither the lien of this Indenture nor any rights or remedies of the Indenture Trustee or the Holders of Notes shall be impaired by the recovery of any judgment by the Indenture Trustee against the Issuing Entity or by the levy of any execution under such judgment upon any portion of the Trust Estate.  Any money or property collected by the Indenture Trustee shall be applied in accordance with Section 5.07 hereof.

Section 5.19.    No Recourse.  The Trust Estate Granted to the Indenture Trustee as security for the Notes serves as security only for the Notes and the Swap Provider.  The Noteholders shall have no recourse against the Owner Trustee, the Indenture Trustee, the Note Registrar, the Authenticating Agent, the Depositor, the Sponsor, the Servicer or any of their respective Affiliates, or to the assets of any of the foregoing entities.

Section 5.20.    Application of the Trust Indenture Act.  Pursuant to Section 316(a) of the TIA, all provisions automatically provided for in Section 316(a) are hereby expressly excluded.

29

LA1 232127v5

# ARTICLE VI

## THE INDENTURE TRUSTEE

Section 6.01.  Duties of Indenture Trustee.  (a) If an Event of Default has occurred and is continuing of which a Responsible Officer of the Indenture Trustee has actual knowledge, the Indenture Trustee shall exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs.

(b)    Except during the continuance of an Event of Default:

(i)    the Indenture Trustee need perform only those duties that are expressly set forth in this Indenture and no others and no implied covenants or obligations shall be read into this Indenture against the Indenture Trustee; and

(ii)    in the absence of bad faith on its part, the Indenture Trustee may request and conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates, opinions, resolutions, statements, reports, instruments or other documents furnished to the Indenture Trustee and conforming, on their faces, to the requirements of this Indenture. The Indenture Trustee shall, however, examine such certificates and opinions to determine whether they conform on their face to the requirements of this Indenture.

(c)    The Indenture Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that:

(i)    The duties and obligations of the Indenture Trustee shall be determined solely by the express provisions of this Indenture, the Indenture Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Indenture, no implied covenants or obligations shall be read into this Indenture against the Indenture Trustee and, in the absence of bad faith on the part of the Indenture Trustee, the Indenture Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any certificates, opinions or other documents (including, but not limited to, any reports or statements furnished by the Servicer) reasonably believed by the Indenture Trustee to be genuine and to have been furnished by the proper party to the Indenture Trustee and which on their face, do not contradict the requirements of this Indenture;

(ii)    this paragraph (c) does not limit the effect of paragraph (a) of this Section 6.01;

(iii)    the Indenture Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer, unless it is proved that the Indenture Trustee was negligent in ascertaining the pertinent facts;

(iv)    the Indenture Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction of the Noteholders (including

30

directions pursuant to Sections 5.13 or 5.17 hereof) or exercising any trust or power or remedy conferred upon the Indenture Trustee under this Indenture; and

(v)     The Indenture Trustee shall not be charged with knowledge of any failure by the Servicer to comply with any of its obligations under the Sale and Servicing Agreement or any breach of representations and warranties under the Sale and Servicing Agreement unless a Responsible Officer of the Indenture Trustee obtains actual knowledge of such failure or breach or the Indenture Trustee receives written notice of such failure or breach from the Servicer.

(d)     Except with respect to duties of the Indenture Trustee prescribed by the TIA, as to which this Section 6.01(d) shall not apply, for all purposes under this Indenture, the Indenture Trustee shall not be deemed to have notice or knowledge of any Event of Default described in Sections 5.01(c), 5.01(d), 5.01(e), 5.01(f), 5.01(g) or 5.01(h) hereof or any Default described in Sections 5.01(c) hereof or of any event described in Section 3.05 hereof unless a Responsible Officer assigned to and working in the Indenture Trustee's corporate trust department and having direct responsibility for this Indenture has actual knowledge thereof or unless written notice of any event that is in fact such an Event of Default or Default is received by the Indenture Trustee at the Corporate Trust Office, and such notice references the Notes generally, the Issuing Entity, the Trust Estate or this Indenture.

(e)     No provision of this Indenture shall require the Indenture Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it under this Indenture or the other Basic Documents.

(f)     Every provision of this Indenture that in any way relates to the Indenture Trustee is subject to the provisions of this Section 6.01 and to the provisions of the TIA.

(g)     Notwithstanding any extinguishment of all right, title and interest of the Issuing Entity in and to the Trust Estate following an Event of Default and a consequent declaration of acceleration of the maturity of the Notes, whether such extinguishment occurs through a Sale of the Trust Estate to another Person, the acquisition of the Trust Estate by the Indenture Trustee or otherwise, the rights, powers and duties of the Indenture Trustee with respect to the Trust Estate (or the proceeds thereof), the Noteholders and the rights of Noteholders shall continue to be governed by the terms of this Indenture.

(h)     The Indenture Trustee shall at all times retain possession of the Indenture Trustee's Mortgage Files in the State of Illinois or the State of California, except for those Indenture Trustee's Mortgage Files or portions thereof released to the Servicer pursuant to this Indenture or the Sale and Servicing Agreement.

(i)     Subject to the other provisions of this Indenture and without limiting the generality of this Section 6.01, the Indenture Trustee shall have no duty (a) to see to any recording, filing, or depositing of this Indenture or any agreement referred to herein or any financing statement or continuation statement evidencing a security interest, or to see to the

31

same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs.

(f)     The Indenture Trustee shall not be bound to make any investigation into the facts of the matters stated in any resolution, certificate, statement, instrument, opinion, report notice, request, consent, order, approval, bond or other paper or document, unless requested in writing to do so by the Noteholders and provided further that payment within a reasonable time to the Indenture Trustee of the costs, expenses or liabilities likely to be incurred by it in tile making of such investigation is, in the opinion of the Indenture Trustee, reasonably assured to the Indenture Trustee by the security afforded to it by the terms of this Indenture or such other security or indemnity as the Indenture Trustee may reasonably require as a condition to taking any such action.

(g)     The right of the Indenture Trustee to perform any discretionary act enumerated in this Indenture shall not be construed as a duty, and the Indenture Trustee shall not be answerable for anything other than its negligence or willful misconduct in the performance of such act.

Section 6.04.     Not Responsible for Recitals, Issuance of Notes or Mortgage Loans. The recitals contained herein and in the Notes, except, with respect to the Indenture Trustee, the certificates of authentication on the Notes, shall be taken as the statements of the Issuing Entity, and the Owner Trustee, the Indenture Trustee and the Authenticating Agent assume no responsibility for their correctness.  The Owner Trustee and the Indenture Trustee make no representations with respect to the Trust Estate or as to the validity or sufficiency of this Indenture or of the Notes.  Neither the Indenture Trustee nor the Owner Trustee shall be accountable for the use or application by the Issuing Entity of the Notes or the proceeds thereof or any money paid to the Issuing Entity or upon a Trust Order pursuant to the provisions hereof.

The Indenture Trustee shall at no time have any responsibility or liability for or with respect to the legality, validity and enforceability of any Mortgage or any Mortgage Loan, or the recordability, sufficiency, perfection and priority of any mortgage or the maintenance of any such perfection and priority or for or with respect to the sufficiency of the Trust Estate or its ability to generate the payments to be distributed to Noteholders under this Indenture, including, without limitation: the existence, condition and ownership of any Mortgaged Property; the existence and enforceability of any hazard insurance or primary mortgage insurance thereon; the validity of the assignment of any Mortgage Loan to the Indenture Trustee or of any intervening assignment; the completeness of any Mortgage Loan; the performance or enforcement of any Mortgage Loan; the compliance by the Depositor, the Sponsor, Issuing Entity or Servicer with any warranty or representation made under this Indenture, the Sale and Servicing Agreement or in any related document or the accuracy of any such warranty or representation; any investment of monies by or at the direction of the Sponsor or the Servicer or any loss resulting therefrom; the acts or omissions of any of the Sponsor, the Servicer or any Mortgagor; any action of the Servicer taken in the name of the Indenture Trustee; the failure of the Servicer to act or perform any duties acquired of it as agent of the Indenture Trustee hereunder; or any action by the Indenture Trustee taken at the instruction of the Servicer.  The Indenture Trustee shall have no responsibility for filing any financing or continuation statement in any public office at any time

33

LA1 232127v5

any investment held in the Payment Account, against delivery of the amount receivable in connection with any sale.

(d)     The Servicer shall not direct the Indenture Trustee to invest any part of the Trust Estate in Permitted Investments that constitute uncertificated securities (as defined in Section 8-102 of the Uniform Commercial Code, as enacted in the relevant jurisdiction) unless it has delivered an Opinion of Counsel addressed to the Indenture Trustee and reasonably satisfactory in form and substance to the Indenture Trustee setting forth, with respect to each type of security for which authority to invest is being sought, the procedures that must be followed to maintain the lien and security interest created by this Indenture with respect to the Trust Estate.

(e)     With respect to any portion of the Trust Estate invested in Permitted Investments, the Indenture Trustee acknowledges and agrees that:

(i)     any Permitted Investment that is held in a deposit account shall be held solely in an Eligible Account; and each such Eligible Account shall be subject to the sole and exclusive dominion, custody and control of the Indenture Trustee; and, without limitation on the foregoing, the Indenture Trustee shall have sole signature authority with respect thereto;

(ii)     any Permitted Investment that constitutes Physical Property shall be delivered to the Indenture Trustee in accordance with paragraph (a) and/or (b) of the definition of "Delivery," as applicable, and shall be held, pending maturity or disposition, solely by the Indenture Trustee or a securities intermediary (as such term is defined in Section 8-102(a)(14) of the Uniform Commercial Code) acting solely for the Indenture Trustee; and

(iii)     any Permitted Investment that is a book-entry security held through the Federal Reserve System pursuant to federal book-entry regulations shall be delivered in accordance with paragraph (c) of the definition of "Delivery" and shall be maintained by the Indenture Trustee, pending maturity or disposition, through continued book-entry registration of such Permitted Investment as described in such paragraph.

Section 8.05.     Releases of Deleted Mortgage Loans.  Upon notice or discovery by a Responsible Officer of the Indenture Trustee that any of the representations or warranties of the Sponsor set forth in Section 4.01 of the Sale and Servicing Agreement was materially incorrect or otherwise misleading with respect to any Mortgage Loan as of the time made, the Indenture Trustee shall direct the Sponsor to either cure, repurchase or substitute for such Mortgage Loan as provided in Section 4.02 of the Sale and Servicing Agreement.  Upon any purchase of or substitution for a Deleted Mortgage Loan by the Sponsor in accordance with Section 2.06 or Section 4.02 of the Sale and Servicing Agreement, the Indenture Trustee shall deliver the Indenture Trustee's Mortgage File relating to such Deleted Mortgage Loan to the Sponsor, and the Issuing Entity and the Indenture Trustee shall execute such instruments of transfer as are necessary to convey title to such Deleted Mortgage Loan to the Sponsor from the lien of this Indenture.  Nothing in this Section 8.05 should be construed to obligate the Indenture Trustee to actively monitor the correctness or accuracy of the representations and warranties of the Sponsor.

49

.

*In re Debtor:  James L Macklin*
USBC Eastern District of California Case No:  10-44610
Debtor's Opposition to Motion for Relief from Stay (Unlawful Detainer)
Declaration of James L. Macklin

**EXHIBIT "G"**

Recording Requested By:
**Accredited Home Lenders, Inc.**
**A California Corporation**
Return To:

**Accredited Home Lenders, Inc.**
**Attn: Post Closing Dept.**
**16550 West Bernardo Dr. Bldg 1**
**San Diego, CA 92127-1870**

Prepared By:

**Accredited Home Lenders, Inc.**
**A California Corporation**
**15090 Avenue of Science**
**San Diego, CA 92128**

PLACER, County Recorder
JIM MCCAULEY
**DOC- 2006-0046431**
Acct 212-FINANCIAL TITLE COMPANY
**Friday, APR 28, 2006 14:30:00**
MIC   $3.00:AUT   $17.00:SBS   $18.00
REC   $18.00:
Ttl Pd   $55.00            Nbr-0001476398
                                baj/BJ/1-17

RECORDING REQUESTED BY·
FINANCIAL TITLE COMPANY
425 |584 |GF -823

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN 100176106033072308

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **April 14, 2006**
together with all Riders to this document.

(B) "Borrower" is **JAMES LEN MACKLIN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY.**

Borrower's address is **10040 WISE ROAD**
**AUBURN, CA 95603**                           . Borrower is the trustor under this Security Instrument.

(C) "Lender" is **Accredited Home Lenders, Inc.**
                  **A California Corporation**
Lender is a **Corporation**
organized and existing under the laws of **the State of California**

0603307230

CALIFORNIA -Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS                    Form 3005 1/01

-6A(CA) (0207)
Page 1 of 15

VMP MORTGAGE FORMS - (800)521-7291

Branch :F09,User :3031                    Comment:                    Station Id :OXBZ

Lender's address is **15090 Avenue of Science**
**San Diego, CA 92128**
(D) "Trustee" is **FINANCIAL TITLE COMPANY**

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated **April 14, 2006**
The Note states that Borrower owes Lender **five hundred thirty-two thousand and 00/100**
**Dollars**
(U.S. **$532,000.00**                    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **May 1, 2036**
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                     ☐ Biweekly Payment Rider         ☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(CA) (0207)                    Page 2 of 15                                         0603307230
                                                                                      Form 3005  1/01

Branch :F09,User :3031                                    Comment:                                    Station Id :OXBZ

**(Q)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R)** "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County         of         PLACER :
[Type of Recording Jurisdiction]         [Name of Recording Jurisdiction]
**See Legal Description Addendum Page Attached**

Parcel ID Number: 040-040-046                           which currently has the address of
10040 WISE ROAD                                                    [Street]
AUBURN                                           [City], California 95603      [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

0603307230

-6A(CA) (0207)                   Page 3 of 15                         Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

-6A(CA) (0207)                         Page 4 of 15                    Initials:              Form 3005  1/01

0603307230

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-SA(CA) (0207)                    Page 6 of 15          Initials:                    0603307230
                                                                         Form 3805   1/01

Branch :F09,User :3031                    Comment:                                    Station Id :OXBZ

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

0603307230

Form 3005   1/01

-6A(CA) (0207)                          Page 6 of 15                    Initials

PLACER,CA
Document: DOT 2006.46431

Branch :F09,User :3031                    Comment:                                    Station Id :OXBZ

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(CA) (0207)                    Page 7 of 15                    0603307230

Form 3005    1/01

Branch :F09,User :3031                    Comment:                              Station Id :OXBZ

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6A(CA) (0207)                    Page 8 of 15         Initials         0603307230
                                                                        Form 3005   1/01

Branch :F09,User :3031                          Comment:                                    Station Id :OXBZ

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

0603307230

-6A(CA) (0297)                    Page 9 of 18                              Form 3005   1/01

Branch :F09,User :3031                    Comment:                    Station Id :OXBZ

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6A(CA) (0207)                    Page 10 of 15                    Initials _____    0603307230
                                                                                     Form 3005  1/01

Branch :F09,User :3031                    Comment:                    Station Id :OXBZ

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6A(CA) (0207)                    Page 11 of 18                    Initials: [signature]                    0603307230

                                                                                            Form 3005   1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

0603307230

-6A(CA) (0207)                    Page 12 of 15                    Form 3005   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

0603307230

-6A(CA) (0207)                    Page 13 of 15                    Initials                    Form 3005    1/81

Branch :F09,User :3031                    Comment:                                    Station Id :OXBZ

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                                                         (Seal)
                                          JAMES KEN MACKLIN                          -Borrower

_____            _____              (Seal)
                                                                                     -Borrower

                            (Seal)       _____              (Seal)
                           -Borrower                                                 -Borrower

_____            _____
                            (Seal)                                                   (Seal)
                           -Borrower                                                 -Borrower

_____            _____
                            (Seal)                                                   (Seal)
                           -Borrower                                                 -Borrower

                                                                    0603307230

     -6A(CA) (8207)                       Page 14 of 15               Form 3005   1/01

Branch :F09,User :3031                    Comment:                                    Station Id :OXBZ

State of California
County of   Placer

On     4/19/06              before me, Desiree Vincent, Notary Public
                                                        personally appeared

JAMES LEN MACKLIN

                                                        , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



DESIREE VINCENT
Comm. #1531564
NOTARY PUBLIC-CALIFORNIA
Sacramento County
My Comm. Expires Dec. 3, 2008

_____ (Seal)

-6A(CA) (0207)              Page 15 of 15

                                                    0603307230
                                                    Form 3005   1/01

| Borrower Name(s):<br>JAMES LEN MACKLIN | Lender:<br>Accredited Home Lenders, Inc.<br>A California Corporation<br>15090 Avenue of Science<br>San Diego, CA 92128 |
|---|---|
| | Loan #: 0603307230 |

**Property Address:**
10040 WISE ROAD
AUBURN, CA 95603

**Legal Description:**
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

Initials

MIN # 100176100033072308                    MACKLIN                    Loan #    0603307230
AHL 610101.UFF                              Page 1 of 1

42518842 -823 -MFP

### Legal Description

All that certain real property situated in the County of Placer, State of California, described as follows:

A portion of the East half of Section 18, Township 12 North, Range 8 East, M.D.M., being also a portion of the tract of land shown and designated as Parcel "A", as shown on the Map entitled, "Parcel Map No. 70586", filed for record December 14, 1973, in Book 5 of Parcel Maps, Page 16, described as:

Beginning at the North corner of the parcel of land described hereby, being a point identical with the North corner of the land shown and designated Parcel "A" on the above mentioned Parcel Map; thence along the boundary of said Parcel "A" on the following three consecutive courses: (1) South 43° 50' East 129.81 feet, (2) South 55° 26' East 170.19 feet to the East corner thereof, and (3) South 21° 41' 20" West for a distance of 390.00 feet; thence North 68° 18' 40" West 394.28 feet to a point on the Northwesterly boundary line of the land shown and designated as Parcel "A" on the above mentioned Parcel Map; thence along the Northwesterly boundary of said Parcel "A" on the following two courses: (1) North 27° 51' East for a distance of 261.39 feet and (2) North 42° 01' East 236.57 feet to the point of beginning.

040-840-046