Case 10-44610    Doc 87    Page 1 of 20

FILED
January 05, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003190686

Holly S. Burgess (SBN # 104757)
Law Offices of Holly S. Burgess
680 Auburn Folsom Rd., Suite 109
Auburn, CA  95603
Telephone:  (530) 889-8900
Facsimile:   (530) 889-8988
hollyburgess@lohsb.com

Attorney for Debtor,
JAMES L. MACKLIN

UNITED STATES BANKRUTPCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No.:  2010-44610 |
| JAMES L. MACKLIN, | DC NO. HSB-02 |
| Debtor. | DEBTOR'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR RELIEF OF AUTOMATIC STAY (UNLAWFUL DETAINER) |
| | Date:         February 3, 2011
Time:        9:30 a.m.
Dept:         E – Courtroom - 33
Address:    501 I St., Sacramento, Ca |
| | HON. RONALD H. SARGIS |

    Deutsche Bank National Trust Co. (hereinafter, "Deutsche"), has requested an Order of this Court granting relief from the Stay under 11 U.S.C. §362(a). The hearing on that motion was continued from December 9, 2010 to February 3, 2011, with instructions from the Court for the parties to file further briefing on the issues by January 5, 2011.

    Deutsche filed its unlawful detainer action in state court though it does not have standing to bring the unlawful detainer suit, as it has no valid right, title or interest in the subject property. Debtor challenges the rebuttal presumption of the validity of the trustee's sale deed now held by Deutsche. Deutsche lacks standing as the true creditor or real party in interest, and for all of the

- 1 -

reasons submitted before this Court as follows:

## SUMMARY OF ARGUMENT

Debtor submits that Deutsche is not the true creditor with respect to the note and deed of trust on Debtors residence located at 10040 Wise Road, Auburn, CA for the following reasons:

A. The Real Party in interest in the ownership and/or right to receive payments on the subject property note and deed of trust is not Deutsche;

B. The alleged "beneficiary" of the original lender who foreclosed on Debtors property (Quality Loan Services) was not in fact a beneficial interest holder and not the trustee of the note and deed of trust and therefore the foreclosure was invalid, requiring the sale to Deutsche to be set aside;

C. There has been no "default" on the note payments, as the loan level file shows the loan is current; therefore there are no damages to Movant or any other entity in the chain of title which supports a motion to lift the stay; and

D. Due to Debtor's note and Deed of Trust being securitized and being placed in a Mortgage Backed Security ("MBS") Real Estate Investment Mortgage Conduit Trust ("REIMC"), the note and the deed of trust were separated and the chain of title irreparably broken, so that parties claiming to be trustee's or beneficial interest holders in fact were not the true trustee or the true beneficial interest holder, thus making the foreclosure and sale of Debtor's home to be void.

## INTRODUCTION

1. Not only is the Debtor the victim of fraud, unlawful and predatory lending and an underlying conspiracy to commit fraud, but the Debtor is also facing the pending loss of his home through a void sale initiated and advanced by Movant and other parties in violation of the notice and standing requirements of California foreclosure law.

1. In addition, the challenged foreclosure is based upon a Deed of Trust and a Note in the mortgage that is no longer held by the same entity or party. Further, the foreclosure is based upon a Deed of Trust that was flawed at the date of origination of the loan. The "lender" on the Deed of Trust, Accredited Home Lenders, Inc. ("Accredited ") was not the actual lender

1 or source of the monies that funded the loan. The money to fund the loan came from
2 investors. Accredited acted merely as a broker for the purpose of obtaining Plaintiffs' on
3 loan documents and, therefore, Accredited was merely the servicer of the loan but never the
4 lender or owner of the beneficial interest in the Deed of Trust or the obligation purportedly
5 secured thereby.

6     2.    Mortgage Electronic Registration System, Inc. ("MERS") was named as the
7 beneficiary and as nominee of the "Lender" Accredited on the Deed of Trust, but MERS was not the
8 beneficiary and the "Lender" on whose behalf MERS was named as "nominee," was not the true
9 lender. The true beneficiary under the Deed of Trust or its successor in interest has never declared a
10 default or directed a foreclosure of this home as required under California foreclosure law. Neither
11 the beneficiary, the successor in interest to the beneficiary, the trustee nor the substitute trustee has
12 commenced the challenged foreclosure.

13     3.    Quality Loan Service Corporation ("QUALITY LOAN") conspired to make, cause to
14 be made, and used documents issued and recorded to foreclose on the home in violation of the
15 procedures and notice requirements

16     4.    Movant Deutsche is the putative owner of Debtor's property through a non-judicial
17 foreclosure sale. It "bought"[1] the property from a "grantee" who was not a true grantee, but an
18 entity, QUALITY LOAN, that had no right title or interest in the note and deed of trust as more fully
19 described below. Deutsche is not a bona fide purchaser as it had knowledge that the note was
20 separated from the note and the deed and that grantee did not have clear title to convey the property
21 as described below.

22     5.    Based on documents obtained by the Debtor, Debtor believes and takes the position
23 that the note and deed of trust on Debtors property was conveyed to a tax-free securitized mortgage
24 trust at the time of the execution of the Deed of Trust by Debtor. Debtor believes that the note and
25 Deed of Trust still reside, (were never properly conveyed, pursuant to the requirements of the
26 REMIC Trust and herefore cannot possibly be an asset) in said trust. Debtor's note and deed of trust

---

[1] The Trustee's Sale Deed notes that Deutsche paid $342,550.24, but $0.00 transfer tax. Debtor is informed and believes Deutsche did actually pay any money as falsely noted in this Deed, but acquired the property on a credit swap.

- 3 -

1   was conveyed to the Accredited Mortgage Loan Trust 2006-2 ("LOAN TRUST") on or about April
2   28, 2006.  This trust allegedly holds the subject property loan rights. (See, Evidence of Trust
3   attached as **Exhibit "A"** to the Declaration of James Macklin.)
4         6.    The trust is governed by the Accredited Mortgage Loan Trust 2006-2 Master Sales
5   and Servicing Agreement ("MSSA"), (See **Exhibit "B,"** attached to the declaration of James
6   Macklin.) This trust allegedly holds the subject property loan rights (See, Evidence of Trust attached
7   as **Exhibit "A"** to the Declaration of James Macklin). Deutsche Bank, as Indenture Trustee, is
8   merely a special Corporate Trustee with limited ministerial duties, as opposed to a common law
9   trustee with fiduciary duties and responsibilities and therefore, cannot be harmed at law or in equity
10  as they are not a Real Party in Interest and have never had any pecuniary or financial interest in the
11  subject property, nor have they been authorized to act in any remedial action(s) by majority vote of
12  the investors.   According to the terms of the MSSA, Deutsche has never showed authorization by
13  the voting majority of the Investors of Accredited Mortgage Loan Trust 2006-2, the true
14  "Creditor(s), as mandated by the language of section(s) 10.02 (a)(b)(c) and 7.01 et. seq. of the
15  Master Sales and Servicing Agreement.  Deutsche merely relies upon defective and false documents
16  filed within state court and the Placer County Recorder's Office which are presumed to be
17  authoritative, but which, upon inspection by this Court, shall evidence the fatally defective and false
18  nature of these documents.
19        7.    Debtor has ownership interest rights and possession of the subject property and has
20  never given up those rights either expressed or implied. Debtor would be irreparably harmed through
21  the loss of his unique and valuable property and has the only verifiable equitable interest in the
22  property between the two parties to this action. Deutsche is nothing more than a "Fictitious Payee"
23  and not a bona fide purchaser under the law.
24        8.    David Boyer, Robert J. Jackson and Associates ("Boyer") counsel for Deutsche in his
25  declaration, never offers any proof with admissible evidence, that the parties attempting to assign or
26  convey rights to affect the subject property in fact, have the right to do so.  The documents relied
27  upon by Deutsche are false, null and void for the reasons stated below.  Mr. Boyer only identifies
28

them as being recorded. A simple review of the Exhibits used by Mr. Boyer reveal violations of law, with attendant criminal and civil penalties as alleged herein. (See **Exhibit "C 1-3,"** Placer County Recorder's Office documents on the subject property, attached to the declaration of James Macklin.)

## FACTUAL BACKGROUND

9. On or about September 27, 2010, Deutsche filed a Motion for Relief from Automatic Stay under 11 U.S.C. § 362 without Proof of Claim in the Bankruptcy Case, asserting that said claim is secured by a lien against real property belonging to Debtor located at 10040 Wise Road, Auburn, CA 95603 which is Plaintiffs' residence (hereinafter "the Property"). Deutsche refiled the current motion for relief from stay on November 12, 2010. Attached to the motion for Relief from Automatic Stay was a copy of a Trustee's Deed Upon Sale, between grantor QAULITY LOAN SERVICE CORPORATION and grantee Deutsche, showing transfer tax of $0.00, and claiming that grantee paid $342,550.24 for the property. Debtor believes this alleged sale was a credit bid and that Deutsche actually paid no money for the property.

10. Although there was a purported assignment of the original lender Accredited Mortgage Home Lender's Inc. (Accredited) Deed of Trust, Debtor is informed and believes that such assignment was not done by Accredited but fraudulently conveyed by a third party known as MERS, Inc, who has never had any interest whatsoever in the subject property. Deutsche did not attach the complete County Recorder record on the subject property to its motion for relief from stay, nor did it attach the complete County Recorder record to its unlawful detainer suit. It only attached the Trustee Deed upon sale mentioned in paragraph 5 above, and the state court unlawful detainer suit. None of the other assignments and/or substitutions are attached to either the motion or the unlawful detainer suit. (See **Exhibit "C,"** Placer County Recorder's Office documents on the subject property, attached to the declaration of James Macklin.) Debtor maintains the reason for this is that Deutsche knows and admits all those documents are false and fraudulent and do not reflect <u>accurately</u> the conveyance of both the deed and the note, or in fact, any true conveyance at all.

/ / /

**Chain of Title**

11.     Based on the original deed of trust, Accredited is the alleged lender, the trustee was Financial Title Company, and Mortgage Electronic Registration System was the nominee beneficiary of Accredited.  (See, **Exhibit "G,"** Deed of Trust, attached to the declaration of James Macklin.) Under the specific language of Debtor's deed of trust, only the lender, Accredited Home Lenders Inc., may assign or convey the note and deed of trust.

12.     Deutsche, the grantee under the Deed of Sale and Quality Loan Service Corporation the grantor under the Trustee's Deed upon Sale are stranger to the original mortgage transaction, having no relationship with Accredited.  MERS (who has <u>no assignment</u> from Accredited) purportedly assigned the Accredited Deed of Trust to Deutsche as nominee which assignment of Deed of Trust (See, **Exhibit "C-3,"** Corporate Assignment of Deed of Trust, to the declaration of James Macklin) was **NOT** recorded until November 30, 2009, which is **AFTER** notice of default which was filed on December 8, 2008 by some other entity known as WINDSOR MANAGEMENT COMPANY. (See **Exhibit "D,"** Notice of Default, attached to the declaration of James Macklin). Therefore, the Substitution of Trustee is void for substantive defect.

13.      Pursuant to IRS Code 860D (a)(4), and the governing rules of the Master Sales and Service Agreement of the Trust of the subject REIMC Trust, the asset Note must be conveyed into the REMIC Trust within 90 days of the closing date, June 1st, 2006 in this case. If the Deed "follows the note", this is an impossibility under the evidence provided by Deutsche.  This alleged action by Deutsche would effectively either dissolve the tax free status of the REMIC Trust which allegedly holds the beneficial interest, or, under the laws of the State of New York, under which the REMIC Trust is established pursuant to § 10.16  of the Master Sales and Service Agreement of the Trust, it could **not** have been lawfully conveyed after the closing date of the trust.

14.     As set forth in the Motion for Relief from Automatic Stay filed by Deutsche, Deutsche asserts that it is the rightful owner under the Trustee Deed of Sale from some entity known as QALITY LOAN SERVICE CORPORATION as trustee.

15.     MERS purportedly acted as nominee for Accredited under fraudulent re-assignment

- 6 -

1   of trustee under the Deed of Trust to QALITY LOAN SERVICE CORPORATION on November
2   25, 2009, (See **Exhibit "C-2"**).  In fact MERS has already fraudulently re-assigned the trustee under
3   the Deed of Trust to another entity (Windsor Management Co.) BEFORE it allegedly assigned to
4   QALITY LOAN SERVICE CORPORATION.  (See **Exhibit "C-1"**).

5          16.     Although according to the county recorder record, Windsor Management Co., was
6   now the trustee, MERS substituted QALITY LOAN SERVICE CORPORATION as the new
7   Trustee.  THIS WAS NOT A CONVEYANCE OF THE DEED AND THE NOTE. QALITY LOAN
8   SERVICE CORPORATION never had an interest in the note and did not have the right to receive
9   the payments.  Despite having no interest in the promissory note, QALITY LOAN SERVICE
10  CORPORATION recorded a false assignment of bothe the "note and deed of trust" to Deutsche
11  Bank on November 30, 2009.  (See **Exhibit "C-3"**).MERS and QALITY LOAN SERVICE
12  CORPORATION were never parties to the transaction, or entitled to payment from Plaintiffs.  But
13  more **importantly, how could QALITY LOAN SERVICE CORPORATION sell the property**
14  **to Deutsche for the falsely purported amount of $342,550.24 on December 21, 2009 (See**
15  **Trustee's deed of Sale) when it had purportedly <u>already</u> previously assigned both the note and**
16  **the deed of trust, with the right to money due to Deutsche on November 30, 2009?  If Debtor's**
17  **note and Deed of Trust resided in the REIMC Trust, and the REIMC Trust was closed in**
18  **2006, absent a vote of the certificate holders of the REIMC Trust, how could it be "reassigned"**
19  **three years later in 2009 by different parties that held it in 2006?**

20         17.     Plaintiffs are informed and believe that MERS is not a nominee with Power of Sale
21  under the ACCREDITED Deed of Trust and fraudulently attempted to assigned the ACCREDITED
22  Deed of Trust to others and that MERS never had any interest in the ACCREDITED Deed of Trust
23  or the promissory note secured thereby.

24         18.     Deutsche's fraudulent claim under the ACCREDITED Deed of Trust is entirely
25  unsecured and there is no security that attaches to the ACCREDITED Deed of Trust.

26         19.     In this case, foreclosure and sale has been recorded, however the entity filing the
27  foreclosure has no pecuniary interest in the loan transaction. The foreclosing entity, QALITY LOAN
28

- 7 -

_____
DEBTOR'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR
RELIEF OF STAY (UNLAWFUL DETAINER)

1   SERVICE CORPORATION , is a third party.  The entity lacks standing and the capacity to
2   foreclose.  The entity has no first hand knowledge of the loan, no authority to testify or file affidavits
3   as to the validity of the loan documents or the existence of the loan.  The entity has no legal
4   authority to draft mortgage assignments relating to the loan.  The foreclosing entity and its agents
5   regularly commit perjury in relation to their testimony. Deutsche, the grantor under the deed of trust,
6   had notice of the falsities as alleged herein (as evidenced by the purported pre-sale conveyance of
7   need and deed of trust, Exhibit C-3, which occurred prior to the sale)and therefore is not a bona fide
8   purchaser.

**Securitization of Debtor's Note and Deed of Trust**

10          20.     In true fact ACCREDITED, the "Lender", on the original Promissory Note was not
11  the lender.  The originators of the loan immediately and simultaneously allegedly securitized the
12  note through the means of conversion of an U.C.C. Article III negotiable Instrument into U.C.C.
13  Article VIX, non-negotiable paper.  The beneficial interest in the note was never in the named
14  lender, who actually served as the broker, rather  other unknown and unnamed parties to the
15  transaction provided funding, as principals, without the terms and conditions disclosed to
16  Debtor/Borrower.  In this case, MERS, acting as nominee for ACCREDITED under the assignment
17  of ACCREDITED Deed of Trust, was never intended to be the assignee of the alleged mortgage
18  loan.  The Servicer, QUALITY LOAN SERVICE CORPORATION, who acted as trustee for the
19  sale, was and is not in privity with the lender.  The true owner or beneficiary of the mortgage loan
20  has not declared a default, cannot declare a default under its' Trust Agreement, and does not have an
21  interest in the Note that allows for any remedial actions to be undertaken by the Beneficial Interest
22  Holder(s).
23          21.     Debtor is informed and based on information and belief alleges the obligations
24  reflected by the note allegedly secured by assignment of ACCREDITED Deed of Trust to MERS
25  have been satisfied in whole or in part because the investors who furnish the funding for these loans
26  have been paid to the degree that extinguishments of the debts has occurred with the result that there
27  exist no obligations on which to base any foreclosure on the property owned by Plaintiffs. The

- 8 -

DEBTOR'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR
RELIEF OF STAY (UNLAWFUL DETAINER)

servicer, master servicer, trustee and the Trust itself are the only Obligors to the alleged debt, pursuant to section 9 of the note and the corresponding language of the controlling trust agreements. See, **Exhibit H** to Declaration of James Macklin, the documents showing proof of payment. **Exhibit H** shows the Debtor's loan payment level to be current. Movant has in the past and continues to cloud the title and illegally collect payments and attempt to foreclose upon the property of the Debtor when they do not have lawful rights to foreclose, and are not holders-in-due-course of the notes.

22. The mortgage loan assigned to MERS, as nominee, is, at most, an unsecured debt. The only parties entitled to collect on the unsecured debt would be the holder-in-due-course and beneficial owner(s) of the original Promissory Note, the original "Lender of Record", *if* the asset is still booked as an asset on the books of the lender, Accredited, and has not been sold and de-recognized as an asset under FASB 140.

23. Certain individuals who were the employees of the Servicer QUALITY LOAN SERVICE CORPORATION, and even the employees of the law firms, executed and notarized forged documents as to the ownership of the loan. The affiants have committed counts of fraud, perjury and forgery of the mortgage loan.

24. Deutsche, represented itself as a "Deutsche Bank National Trust Company, as Indenture Trustee" is merely a special Corporate Trustee with limited ministerial duties, as opposed to a common law trustee with fiduciary duties and responsibilities. These rights, duties and obligations do not include any remedial actions as they relate to the assets of the REMIC Trust (See **Exhibit "B,"** the Master Sales and Servicing Agreement ("MSSA") attached to the Declaration of James Macklin, ***Trustees' Rights and Duties*** § 3.04, 7.01 et.seq, 10.02. and 10.16). Unless Deutsche as the Indentured Trustee has actual knowledge of a default, it cannot act. (See **Exhibit "F,"** The Indenture, §6.01 and §6.01(d), attached to the declaration of James Macklin). By the terms of the Indenture, Deutsche is prohibited from any action including foreclosure.

25. Importantly, Deutsche, as "Trustee" or custodian, must have the mortgages recorded in the investors name as the beneficiaries of the MBS within 90 days of the "closing date" ***(IRS Rule***

1    *860D (a)(4))*, as defined within the REMIC Trust Agreement.  Every mortgage in the MBS should
2    have been publicly recorded in Placer County where the property is located with a mortgage in the
3    name of "Accredited Mortgage Loan Trust 2006-2, under the pooling and servicing agreement dated
4    June 1, 2006."  Such mortgage would have had been publicly recorded in the year 2006.

5         26.    The loan servicers like WINDSOR MANAGEMENT COMPANY and QUALITY
6    LOAN SERVICE CORPORATION, are merely administrative entities, under limited power of
7    attorney, which collect the mortgage payments and escrow funds. The Servicer has no greater power
8    than its' Principal, the Trustee, (without the express voting majorities' authorization by majority
9    vote, signed individually, under penalty of perjury), and lacks the authority to bring any action on
10    behalf of the REMIC Trust. The Indenture Trustee, Servicer, Issuing Entity (REMIC Trust),
11    Depositor, Underwriter, and Master Trustee, U.S. Bank, N.A., have executed Trust Agreements,
12    under oath, with the Security Exchange Commission ("SEC"), and the Internal Revenue Service
13    ("IRS"), as mortgage asset "pass-through" entities wherein they can never own or manage the
14    mortgage loan assets in the MBS.  This allows them to qualify as a Tax Free Real Estate Mortgage
15    Investment Conduit ("REMIC") rather than an ordinary Real Estate Investment Trust ("REIT").  As
16    long as "AMLT 2006-2" is a qualified REMIC, no income tax will be charged to the trust.

17         27.    The promissory note was never conveyed pursuant to the Trust mandates and the
18    mortgages were never conveyed or recorded pursuant to the proper chain of custody and Assignment
19    within the Trust Agreement(s).

20         28.    In this scenario, even if the foreclosing entity produces a copy of a note, or even an
21    alleged original, the mortgage loan was not conveyed into the trust under the requirements of the
22    prospectus for the trust or the REMIC requirements of the IRS. Mere possession of an Instrument
23    does not confer the status of a person entitled to enforce the Instrument.

24         29.    Consequentially, the end result is that the required MBS asset, or any part thereof
25    (mortgage note or security interest), was not legally transferred to the trust to allow the trust to ever
26    be considered a "holder" of a mortgage loan.  Neither the "Trust" nor the Servicer QUALITY LOAN
27    SERVICE would ever be entitled to bring a foreclosure or declaratory action.  The Trust will never

28

1  have standing or be a real party in interest before this Court.

2  30. The transfer of mortgage loans into the Trust in which Deutsche Bank is the Trustee after the "cut off date" (in this case September 1, 2006), destroys the trust's REMIC tax exempt status, and this trust would owe millions of dollars to the IRS and the State of California as the income would be taxed at of one hundred percent (100%), if the Court were to find in favor of the Movant(s). In this scenario, the Court would be obligated to report to the IRS and the SEC the findings of the Court so that immediate financial sanctions and possible criminal charges could be brought against the Movant(s).

31. Subsequent to the "cut off date" listed in the prospectus, whereby the mortgage notes and security for these notes had to be identified, and the Note and Mortgages transferred, within 90 days, and thereafter, the pool is permanently closed to future transfers of mortgage assets.

32. Movants fraudulently conveyed Plaintiffs' mortgage loan, which fraudulently recorded on or about November 29, 2009 in an attempt to transfer a Mortgage Assignment into a REMIC after that REMIC's "cut off" and "closing dates."

33. Therefore, the lack of lawful acquisition of Debtor's mortgage loan violates the prospectus presented to the investors and the IRS REMIC requirements.

34. Debtor was the victim of a predatory loan. Debtor signed a Promissory Note and Deed of Trust, however the documents signed by Debtor are void since the named Lender never performed under the Agreement. Debtor is entitled to adequate performance and equal consideration. Parties, other than Debtor, converting his property into an alleged asset of a Mortgage baked security ("MBS'), while his credit and signatures were used to sell securities, of which the profits were used to "fund" the transaction, without his consent or knowledge of the terms and conditions of the contract. Debtor was never informed of the nature of the scheme. They were deliberately induced into signing an alleged Negotiable Instrument which was never intended as such, but intended as collateral for a MBS.

35. The fact that this alleged loan was meant to fund a MBS was a "Material disclosure" which was deliberately and intentionally undisclosed. The failure to disclose the identity of the true

DEBTOR'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR
RELIEF OF STAY (UNLAWFUL DETAINER)

lender at closing was also a "material disclosure"; the nature of which would make the contract voidable under California contract law.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### Deutsche and/or Quality Loan Service Corporation Is Not The Real Party In Interest As The Holder Of The Note And Deed Of Trust

36. Debtor is the Trustor under his own deed of trust. As such, he can move to set aside a non-judicial foreclosure sale if there has been fraud, the sale is conducted improperly, unlawfully or unfairly conducted, or when there has been a mistake that would make it inequitable to let it stand. (See, *4 Miller & Star California Real Estate*). Debtor has filed a civil case in this court entitled *Macklin v. Select Portfolio Servicing, Inc., et. al.* U.S.D.C. (Eastern District) Case No:*10-01097* to Quiet Title to his property and restore the deed to him. Debtor has provided ample evidence in this motion and its attachments under Fed. R. Evid. 1002-1003, to show that Deutsche's claim of holding title and/or beneficial interest in Debtor's home was either fraudulently or unlawfully obtained, and therefore has at least made a good faith showing that the rebuttable presumption of the validity of recorded documents under California CCP §2924 and case law has been shown.

37. Proper transfer of a deed of trust is controlled by California Civil Code §2934(a)(1)(2) et. seq., which provides:

38. "The trustee under a deed of trust upon real property […] may be substituted by the recording, in the county in which the property lies, of a substitution executed and acknowledged by: (A) all of the beneficiaries under the deed of trust, or their successors in interest.. or, (B) the holders of more than 50% of the record beneficial interest of a series of notes secured by the same real property…".

39. Movant Deutsche filed and caused to be filed mortgage and assignments of mortgage in the public record and provided these false documents to prove chain of title that does not exist to the Court as part of its Motion for Relief from Automatic Stay.

40. Rule 17 of the Federal Rules of Civil Procedure require that all actions shall be prosecuted by the real party in interest. Because Deutsche, is precluded from enforceability of the subject Deed by the language of the controlling Trust Indenture and Master Sales and Servicing Agreement, executed by them and filed for record with the United States Securities and Exchange Commission (Accredited Mortgage Loan Trust 2006-2 Asset-Backed Notes, June 1, 2006, (See **Exhibit "A"**) they lack standing as a real party in interest and cannot represent the beneficial interest of the true creditor(s) of this subject property. The series "Accredited Mortgage Loan Trust 2006-2" certificate holders, individually and in their 50% voting majority, must sign and authorize, under penalty of perjury, to ratify the commencement of this, and any actions brought by Deutsche.

41. In the *Restatement of* Property, Third, §5.4 it provides "Assignments of the mortgage and the debt. An assignment of the mortgage also transfers the debt, and vice versa (unless the parties have an intent not to transfer the other document). The purpose of this provision is to keep ownership of the mortgage and the debt together unless the parties consciously desire to separate them. If the mortgage is held by one who does not hold the debt, it cannot be foreclosed". Due to Debtor's Note and Deed of Trust being the subject of a table-funded transaction and used as collateral for the sale of securities, the alleged beneficiary is known as "Accredited Mortgage Loan Trust 2006-2" and the group of equitable investors are represented by Deutsche Bank National Trust Co., as Indenture Trustee. The Note and the Deed of Trust were separated and the chain of title irreparably broken, so that the authority of Deutsche as Trustee is strictly prohibited from any action regarding the trust without the voting majority of the trust being evidenced. Thus, the wrongful sale of Debtor's home is void.

42. Deutsche has violated the laws of California, Cal. Penal Code §115.5, by knowingly placing into the Public Record documents which it knew to be false (Debtor's Ex. "1 A-1" through "1 A-4"). Deutsche and County employees relied upon these false filings and filed an Unlawful Detainer action against Debtor.

43. Under the "Step Transaction Doctrine", as adopted by the Courts, the transactions cited herein known as the loan agreement and the underlying securitization

- 13 -

DEBTOR'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR
RELIEF OF STAY (UNLAWFUL DETAINER)

1  documents, are reliant upon one another and are interrelated. They pass the three test rule
2  and are, therefore, one transaction.  This gives Debtor the requisite interest in
3  securitization transaction and standing to raise these arguments.  The proceeds of the sale
4  of securities were used by Deutsche and its affiliates, knowingly and with intent, to pay out
5  undisclosed fees to interrelated parties, secure various insurances and credit enhancements,
6  thus creating undisclosed profits, and to fund the mortgage loans without the knowledge of
7  the Borrower.

8   44.   This is a serious violation of disclosure as the Debtor/Borrower never had an
9  opportunity to understand the true character of his loan nor the indispensible parties to the
10 transaction. *Shuwa Investment Corp. v. County of Los Angeles (1991) 1 Call. App. 4th 1635,*
11 *1648-1649; Shuwa, Supra at p. 1648 [End Result Test, Interdependence Test, Binding*
12 *Commitment Test].* Only one test needs to be satisfied for the step transaction doctrine to
13 apply (*McMillim-BCED/Miramar Ranch North v. County of San Diego (1995) Cal. App.*
14 *4th 545, 556).*

15   45.   The original lender issued a predatory loan to Debtor.  Deutsche Bank
16 claims that ("Ex. 2-B" pg. 6 (m)), each loan within the "AMLT 2006-2" trust complied
17 with all state, federal, local laws and regulations including Truth In Lending and other
18 consumer protection laws, and disclosure and recording laws.

19   46.   In fact, Debtor's Uniform Residential Loan Application was intentionally
20 falsified by persons unknown to Debtor as to the "Year Acquired" (Debtor acquired the
21 property in March, 2005), "Years on the Job and Yrs. Employed in this field" (Debtor was
22 employed in his field for three yrs. And only held his Contractor's License for two yrs., as
23 verified by the Broker/Lender), Pg. 2, the "Yr. Acquired is different from the first pg.,
24 indicating a "seasoning" issue for the approval of a loan for the lender, Pg. 3: the lender
25 shows Debtor's "Base Monthly Income" as $29,363.03. This is a false representation made
26 and accepted by the  Lender. Pg. 10 clearly shows Debtor's verified taxable income to be
27 $7,034.75 per month, a difference of $22,328.28. This is Predatory Lending in its most
28

egregious and blatant form. Deutsche's alleged agents also falsified assets on the same pg. 3 under cash on hand column as $65,000.00 in Debtor's Wells Fargo bank account. This money was never there…ever. Pg. 5 of the same Exhibit shows that the property was valued at $615,000.00. Since a first and second mortgage were executed by Debtor with the same "Lender" in the amount of $659,000.00, this creates a loan which exceeds the amounts allowed to be loaned based upon the property value. At the bottom of the pg. 5, the court should note that the interview was conducted by telephone and Debtor was never privy to the information being inserted into this, or any other application forms used by Deutsches' agents and affiliates. On pg. 10, the "Underwriting Transmittal Summary" used by the Lender, the appraised value has suddenly changed from $615,000.00 to $665,000.00.

/ / /

47.     These loan-to-value ratios are exactly what they need to be in order for the loan to be accepted into the mortgage loan trust. This is fraudulent and deceptive lending practices executed with knowledge and intent by the Deutsche and its affiliate lender, Accredited Home Lenders, Inc., as exhibited in the Trust Indenture and Sales and Servicing Agreement as filed with the S.E.C. June 1, 2006. (Exhibit F to Declaration of James Macklin).

48.     The predatory loan was planned for and obtained fraudulently by these parties. It was for the sole purpose to securitize Debtor's loan in the REIMC Trust to make huge profits. In doing so Debtor's note and deed of trust were separated to comply with the IRS and SEC rules concerning REIMC Trust security instruments. Consequently the chain of title was irreparably broken and the foreclosure in this case void.

## II.

### The Note And Deed Of Trust Were Separated And The Chain Of Title Has Been Broken

49.     As required by SEC, this Mortgage Backed Security ("MBS") REIMC Trust

1  has a Master Sales and Servicing Agreement ("MSSA") (**Exhibit "B"**) which is dated June
2  1, 2006 and must be publicly filed.  The only purpose for the MSSA is for the
3  administration and distribution of funds to the investors and the obligation of the so called
4  Trustee in administering the MBS.  The investors who put up money for the MBS and who
5  received the MBS certificates or Bonds, are purported to not be parties to the MSSA.
6  However, under the Step Transaction Doctrine, as adopted by the Courts, these transactions
7  are interdependent of one another and interrelated and, therefore, fall under the scope of a
8  "single transaction", as defined by the Doctrine. The <u>Borrowers and the Investors</u> are the
9  true Principals to the transaction, with the only financial and pecuniary interest in the
10  transaction(s).

11    50. The MSSA merely sets forth what happens after the mortgages are bundled
12  together.  However, the MSSA also sets forth a **Cut-Off Date**.  The cut-off date is the date
13  on which all mortgage loans in the MBS REIMC trust must be identified and set out in the
14  SEC required list of mortgage loans.

15    51. Like the cut-off date, this MBS REIMC Trust had a **Closing Date**.  The
16  Closing Date is the date that the individually identified mortgages were to be transferred
17  through the Custodian for the benefit of the investors.  The Trust Custodian must certify
18  that for each mortgage loan, the Trust Custodian has possession of the original Promissory
19  Note, all original endorsements and assignments transferring the Note and proof that the
20  ownership of the Note has been lawfully transferred for the benefit of the investors.
21  Further proof of the ownership of a mortgage loan is required by a public recording of the
22  Mortgage or Assignment of the mortgage itself.  This MUST have occurred by the closing
23  date. All intervening assignments (the warehouse lender, REIMC Trust, Depositor, REMIC
24  Trust and Indenture Trustee, as evidenced by the MSSA Agreement, must be completed
25  and recorded in order for the Note and Deed of Trust to be "held" by the trust.  If this chain
26  of beneficial ownership is not shown, it is broken and cannot be put back together again. It
27  is a condition precedent to the formation of the trust.
28

- 16 -

**DEBTOR'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR
RELIEF OF STAY (UNLAWFUL DETAINER)**

52.     In this case, Debtor's mortgage was never part of MBS scheme as Deutsche Bank because the alleged assignment of the mortgage loan into the trust **did not occur until** on or about November 25, 2009; wherein the MBS closing date was September 1, 2006.

53.     Deutsche Bank, as MBS Indentured trustee, claims to be acting on behalf of the MBS REIMC Trust and claims that it has acquired the loan from MERS, who was not the lawful party in ACCREDITED deed of trust.  The multiple transfers of title of the mortgage loan between the originator, ACCREDITED and the MBS REIMC Trust is simply ignored as it can never be proved or shown to the Court.  Chain of Mortgage assignment is broken as Deutsch and QUALITY LOAN SERVICE CORPORATION were never the mortgagee of record under a Mortgage Assignment and has absolutely no legal tie to the investors in the MBS.

54.     The assignment of Debtor's mortgage was signed and notarized three years (2009) after the actual date of the loan and the date listed with the SEC and IRS as the "Closing" of the REMIC.  In this case, if found to be true, this MBS REIMC Trust has been operating illegally as a tax exempt REMIC.

55.     Here, the Note and Mortgage were severed or de-coupled when the ACCREDITED deed of trust was fraudulently assigned to MERS as nominee for Accredited.  Accredited never loaned any money to the Plaintiffs.  MERS was never a beneficiary under the Note.  MERS purportedly held the Mortgage as "nominee" for Accredited, an assignee of fraudulently conveyed deed of trust.  Accredited is now bankruptcy (See *In Re Accredited Home Lenders Holding Co.,* U.S.B.C., District of Delaware (Delaware) Case No.: 09-11516-MFW).  Since the filing of the bankruptcy, the only party who could authorize the mortgage assignment for a bankrupt mortgage assignee would be the Bankruptcy Trustee.  In this case, MERS, Inc. has been assigning on behalf of a bankrupt entity, a criminal violation of the bankruptcy code. As such, any assignment from MERS was a legal nullity.  MERS never had an interest in this fraudulently conveyed

1 mortgage and Note.

2  56. MERS assigned mortgage was prepared by an agreement between the Movants. These parties used false information regarding the individuals executing such mortgages and assignments, holding such individuals out to be officers of MERS. This is the false notarization of the assignments, known popularly as "Robosigners". Even a cursory glance as the notarizations in **Exhibit C** to Declaration of James Macklin shows extreme irregularities in the execution of the documents in the chain of title on Debtor's property. The sale is therefore void.

### III.

### Debtor Is Not Required To Post A Bond, As One Is Already In Place And The Loan Payments Are Current

57. The whole basis of the foreclosure action in that the mortgage obligation is in default. In fact, the obligation has been paid and the current loan level file shows the loan payments as current. See, **Exhibit H.** Under the terms of the MSSA, governing the REIMC trust, of which the Debtor's loan was conveyed in 2006, the obligations reflected by the note allegedly secured by assignment of d Accredited Deed of Trust to Deutsche, have been satisfied in whole or in part because the investors who furnish the funding for these loans have been paid to the degree that extinguishments of the debts has occurred with the result that there exist no obligations on which to base any foreclosure on the property owned by Plaintiffs. The only parties entitled to collect on the debt would be the holder-in-due-course and beneficial owner(s) of the original Promissory Note, the original "Lender of Record", if the asset is still booked as an asset and has not been sold and de-recognized as an asset under FASB 140.

58. An obligation exists, as a condition precedent, which obligates the Servicer, Master Servicer, Indenture Trustee, and the REMIC Trust itself, to pay forward, or advance, any and all payments under the mortgages it represents to the trust fund for the benefit of the certificateholders. This resulted in obligors under Debtor's mortgage, other than the Debtor

- 18 -

|   |   |
|---|---|
| 1 | himself.  These parties to the trust are currently performing this mandatory function under the |
| 2 | strict language of the controlling trust agreements which they signed, under oath and penalty of |
| 3 | perjury, voluntarily assigning themselves as surety or guarantor to all of the Notes. (See: |
| 4 | Execution version of the trust agreement and Prospectus). Specifically, a portion of this |
| 5 | Debtor's mortgage payments that were placed in the REMIC were used to purchase credit |
| 6 | enhancements, that included loan guaranty insurance, loan loss insurance, primary mortgage |
| 7 | insurance, loan pool insurance and credit default swaps, all of which were used to keep Debtors |
| 8 | mortgage payments current to **this day**.   It would be redundant to require the Debtor to post a |
| 9 | bond when there has been no loss, and no loss can accrue under the mortgage transaction |
| 10 | signed by Debtor. The only loss calculable in this case would be to the Debtor, as he has the |
| 11 | sole equity in the subject property. |
| 12 | 59. Because the loan payments are current, there is no default on the note and the foreclosure sale |
| 13 | of Debtor's property is void.  Because Accredited and/or QUALITY LOAN and/or Deutsche is |
| 14 | not damaged because the loan level payments are current, it would be unfair and unjust |
| 15 | enrichment to them to allow the unlawful detainer case to go forward at this time. |
| 16 | 60. |
| 17 | 61. |
| 18 | 62.      . (add part that part of Debtor's mortgage payments were used to buy the |
| 19 | insurance bond that keeps the loan level payments current) we should add something about |
| 20 | the bond already in place etc. |
| 21 | 63.      Because the loan payments are current, there is no default on the note and |
| 22 | the foreclosure sale of Debtor's property is void.  Because Accredited and/or QUALITY |
| 23 | LOAN and/or Deutsche is not damaged because the loan level payments are current, it |
| 24 | would be unfair and unjust enrichment to them to allow the unlawful detainer case to go |
| 25 | forward at this time. |
| 26 | 64.      Debtor has provided ample evidence under Fed. R. Evid. 1002-1003, that |
| 27 | Deutsche's claim of holding title and/or beneficial interest in Debtor's home cannot be |
| 28 |   |

- 19 -

_____

DEBTOR'S SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION FOR
RELIEF OF STAY (UNLAWFUL DETAINER)

valid for all of the reasons stated herein.  The Debtor's legal and equitable rights to the subject property have never been extinguished. Under 11 U.S.C. §541(a)(1), Debtor, Macklin, has all rights reserved there under and opposes Deutsche's legal conclusion of duly perfected title as being without merit and relying upon false and substantively misleading documents, as evidenced herein. These documents were filed with a Court and the County Recorder's Office with the intent that a Homeowner would become indebted to a specific party not entitled to such and that ownership interest would be conveyed to Deutsche herein without lawful cause. The title was never duly perfected in Deutsche under the laws of the State of California or under the laws of the United States.  Therefore, Deutsche's motion to lift the stay in this bankruptcy case should be denied.

Dated:  January 5, 2011                             Respectfully submitted,

                                          LAW OFFICES OF HOLLY S. BURGESS


                                By: **/s/  Holly S. Burgess**                              .
                                       HOLLY S. BURGESS