
FILED
August 18, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003712611

**HUGHES LAW CORPORATION**
Gregory J. Hughes  # 071288
Christopher D. Hughes  # 254864
3017 Douglas Boulevard, Suite 300
Roseville, California 95661
Telephone (916) 774-7506
Facsimile (916) 791-1644
hp@hp-llp.com

Attorneys for Thomas A. Aceituno,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

In re

JAMES L. MACKLIN

                                    Debtor.

)  Case No.:  10-44610-E-7
)
)
)  DCN: GJH - 2
)
)
)  **TRUSTEE'S MOTION TO APPROVE**
)  **SALE OF CAUSES OF ACTION**
)
)
)
)
)  Date:        September 15, 2011
)  Time:       10:30 am
)  Dept.:       E (Courtroom 33)
)

To THE HONORABLE RONALD H. SARGIS, United States Bankruptcy Judge:

Thomas A. Aceituno, the Chapter 7 Trustee ("Trustee") in the above-captioned Chapter 7 case, hereby moves for an order approving the sale of all of the Estate's causes of action against Deutsche Bank National Trust Co., defendant in Adv. Proc. No. 11-2024.  The grounds for this motion are as follows:

1.      Trustee is the duly-appointed Chapter 7 Trustee in the above-captioned case.

2.      The Chapter 7 Case was initiated as a Chapter 13 case on or about September 16, 2010, and was converted to a case under Chapter 7 on October 5, 2010, when the Bankruptcy

///

- 1

Court granted Debtor's motion to convert the case to a case under Chapter 7.  Trustee was immediately appointed as Trustee for the Chapter 7 Case.

      3.    On January 13, 2011, Debtor initiated an adversary proceeding (Adv. Proc. No. 11-2024) ("the Adversary Proceeding") in the U. S. Bankruptcy Court for the Eastern District of California against Deutsche Bank National Trust Co.,  as Indenture Trustee for the Accredited Mortgage Loan Trust 2006-2 Asset-Backed Notes et al. (the "Defendant").  In the Adversary Proceeding, Macklin asserted various claims against Defendant regarding a loan against a residence ("the Residence") located at 10040 Wise Rd., Auburn, CA.

      4.    On June 17, 2011, Debtor filed a First Amended Complaint against Defendant, asserting causes of action for Violations of Truth in Lending Act; Violations of Real Estate Settlement Procedures Act; Violations of Fair Credit Reporting Act; Fraud; Unjust Enrichment; Civil RICO Violations; Violations of California Business & Professions Code § 17200; Breach of Security Instrument; Wrongful Foreclosure; and Quiet Title.  These causes of action and any other claims which Debtor may assert against Defendant in connection with a loan against the Residence are hereinafter referred to as "the Claims."

      5.    As a result of the filing of the Chapter 7 Case, a bankruptcy estate ("the Estate") was created.  The Estate owns all assets of Debtor as of the date of filing of the Chapter 7 Case. The Claims and the Residence are property of the Estate.

      6.    The Bankruptcy Court has authorized Trustee to intervene as a party plaintiff in the Adversary Proceeding.  As a result, both Debtor and Trustee are acting as co-plaintiffs in the Adversary Proceeding.

      7.    Trustee is of the view that the interests of all parties would be best served by a single lawsuit against Defendant, with a single party in control of the litigation, rather than competing plaintiffs asserting the same causes of action.  Further, the Trustee is of the view that the optimal mechanism to allow a single adversary proceeding against Defendant, with a single plaintiff to represent the interests of all, is to have the Debtor assert the claims of the Estate against Defendant.

///

8.      Trustee and Debtor have agreed to transfer the Estate's interest in the Claims to Debtor, in exchange for Debtor's promise to pay all proceeds from the litigation to the Estate, up to $150,000, after payment of attorneys' fees and expenses of litigation.  For purposes of the agreement, attorney's fees are capped at one-third of the gross proceeds of the litigation; costs will be reimbursed to the Debtor.  Any settlement of the litigation will be subject to Bankruptcy Court approval, including approval of the attorney's fees and costs.

9.      An unsigned copy of the agreement assigning the Claims is submitted herewith as Exhibit A.

10.      This motion is based on 11 U.S.C. § 363(b), which authorizes the sale of assets of the Estate outside the ordinary course of business after notice and a hearing.

11.      The Trustee is presently on vacation.  Attached to the Declaration of Gregory J. Hughes submitted herewith is an unsigned copy of the Trustee's declaration, which he will sign and submit on his return (on or shortly after August 22, 2011).

12.      As stated in the Trustee's unsigned declaration, the terms of the sale are reasonable and in the best interests of the Estate.  The Estate owns the Claims, but has no assets to litigate the Claims to a judgment.  The Claims have little or no value if someone cannot pursue them.  The Debtor has initiated a lawsuit on the Claims, and his attorney is willing to pursue the Claims—but the Debtor does not own the Claims.  The obvious solution is to transfer the Claims to the Debtor, for a price.

13.      The negotiated price is payment by the Debtor of up to $150,000 out of the net proceeds from the litigation.  This amount should be sufficient to pay all administrative expenses in full, and all creditors' claims in full.  Attorney's fees and costs related to the litigation will be paid off the top, and then the Estate will receive the net proceeds, up to $150,000.   Attorney's fees, for purpose of the agreement, will be capped at one-third of the gross proceeds of the litigation.  A contingency fee of 33.3% will compensate Debtor's counsel for the risk of non-payment in the event the litigation is unsuccessful.  The requirement of court approval for any settlement will ensure that everyone's expectations, as reflected in the agreement, are met.

///

14.     As is the case for any sale of assets, the sale of the Claims will be subject to overbids.  In order to put all potential purchasers on an even footing, Trustee proposes that any overbidders must agree to pay $150,000 to the Estate, and pay cash for the differential between $150,000 and the amount of the overbid, as stated in more detail in the following paragraphs.

15.     Any overbidder must agree to pay $150,000 to the Estate, payable immediately if the Adversary Proceeding is not to be prosecuted, or upon conclusion of the litigation, if the Adversary Proceeding proceeds to settlement or judgment.  Thus, any overbidder who intends to obtain a dismissal of the Adversary Proceeding should plan on immediately paying $150,000, plus the difference between $150,000 and the overbid amount.  Any overbidder who intends to pursue the Adversary Proceeding should plan on paying $150,000 when the Adversary Proceeding is resolved by settlement or judgment.  **FOR ALL OVERBIDDERS, THE OBLIGATION TO PAY $150,000 IS NOT CONTINGENT ON THE RESULTS OF THE LITIGATION; THE OBLIGATION TO PAY $150,000 WILL ARISE IMMEDIATELY UPON COURT APPROVAL OF THE OVERBID, AND THE $150,000 WILL BE PAYABLE IMMEDIATELY UPON DISPOSITION OF THE LITIGATION.** The obligation to pay $150,000.00 will be reflected by a promissory note for $150,000.00 and must be executed by a person or entity with sufficient financial resources to satisfy the Trustee and the Court that the obligation will be paid when due.

16.     The Trustee further proposes that bidding increase in increments of $10,000. Thus the first overbidder would be required to pay $10,000 and accept the obligation of paying an additional $150,000; a subsequent overbidder would be required to pay $20,000 and accept the obligation of paying an additional $150,000, etc.

17.     If there are multiple overbids (i.e., a bidding battle among two or more parties), the Trustee proposes that any backup offers which the Court might choose to approve should be approved for the bidder's initial offer—not the highest offer before the winning bid.   The purpose of this provision is to ensure that overbidders do not bid the price up without an intention to perform, in order to force other overbidders to bid amounts which they would not have agreed to pay absent the winning overbidder's bad faith bid(s).

1

WHEREFORE, Trustee prays for an order approving the sale of the Claims on the terms

2

stated herein, for such other and further relief as the Court deems appropriate.

3

4

Dated: August 18, 2011

5

**HUGHES LAW CORPORATION**

6

7

By: _/s/Gregory J. Hughes_
Gregory J. Hughes, Attorney for

8

Trustee Thomas A. Aceituno

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28